Evan A. Fetters (Utah Bar # 16045)
*Pro Hac Vice Application To Be Filed*
Tyler A. Theobald (California Bar # 254215)
*Pro Hac Vice Application To Be Filed*
Spencer H. Reed (Utah Bar # 13338)
*Pro Hac Vice Application To Be Filed*
**OFFICE OF THE GENERAL COUNSEL OF MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC.**
111 South Main Street, Suite 500
Salt Lake City, UT 84111
Tel: (801) 736-2627
Fax: (801) 736-2610
evan.fetters@marcusmillichap.com
tyler.theobald@marcusmillichap.com
spencer.reed@marcusmillichap.com

Shawn T. Richards (Utah Bar # 11949)
*Pro Hac Vice Application To Be Filed*
Christopher S. Hill (Utah Bar # 9931)
*Pro Hac Vice Application To Be Filed*
**KIRTON | MCCONKIE**
36 S. State Street, Suite 1900
Salt Lake City, UT 84111
Tel: (801) 328-3600
Fax: (801) 212-2019
srichards@kmclaw.com
chill@kmclaw.com

Dan R. Waite (Nev. Bar # 4078)
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
dwaite@lrrc.com

**G. Robert Blakey** (D.C. Bar # 424844)
*Pro Hac Vice Application To Be Filed*
William J. & Dorothy K. O'Neill
Professor of Law
Notre Dame Law School[1]
7002 East San Miguel Ave.
Paradise Valley, AZ 85352
Tel: (574) 514-8220
blakey.1@nd.edu

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC., MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF NEVADA, INC., PERRY WHITE, and GORDON ALLRED,<br><br>         Plaintiffs,<br><br>v.<br><br>DEVIN REISS, LEE K. BARRETT, NEIL SCHWARTZ, NORMA JEAN OPATIK, WAYNE CAPURRO, RICHARD "DICK" JOHNSON, JAN HOLLE, the NEVADA REAL ESTATE COMMISSION, the NEVADA REAL ESTATE DIVISION, and JOHN or JANE DOES 1-10,<br><br>         Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1.  Violation of Federal Antitrust Laws<br>2.  Violation of Nevada Antitrust Laws<br>3.  RICO<br>4.  42 U.S.C. § 1983<br>5.  Abuse of Process<br>6.  Conspiracy<br>7.  Deceptive Trade Practices<br>8.  Interference with Business Relations<br>9.  Declaratory Judgment<br><br>AND JURY DEMAND |

---

[1] For purposes of identification only.

106826895_4

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

1    Plaintiffs, Marcus & Millichap Real Estate Investment Services, Inc. ("**M&M**") and

2    Marcus & Millichap Real Estate Investment Services of Nevada, Inc. ("**M&M of Nevada**")

3    (collectively the entity Plaintiffs are referred to herein as "**Marcus**"), Perry White ("**White**"), and

4    Gordon Allred ("**Allred**") (collectively, the individual Plaintiffs are referred to herein as the

5    "**Marcus Brokers**") (collectively all Plaintiffs are referred to herein as "**Marcus & Millichap**"),

6    hereby complain against the Defendants Lee K. Barrett, a broker[2] competing with Marcus &

7    Millichap associated with Barret & Co, Inc ("**Barrett**"), Neil Schwartz, a broker competing with

8    Marcus & Millichap associated with Coldwell Banker Premier Realty ("**Schwartz**"), Devin Reiss,

9    a broker competing with Marcus & Millichap associated with Coldwell Banker Premier Realty

10   ("**Reiss**"), Norma Jean Opatik, a broker competing with Marcus & Millichap associated with

11   Realty Executives ("**Opatik**"), Wayne Capurro, a broker competing with Marcus & Millichap

12   associated with Capurro & Reid Real Estate ("**Capurro**") (collectively Barrett, Schwartz, Reiss,

13   Opatik, and Capurro are referred to herein as the "**NREC Defendants**"), Richard "Dick"

14   Johnson, a broker competing with Marcus & Millichap associated with the Johnson Group

15   ("**Former NREC President**"), Jan Holle, a former broker who competed with Marcus &

16   Millichap and is now Chief Investigator of the NRED ("**NRED Chief Investigator**").

17   The individual Defendants, Barrett, Schwartz, Reiss, Opatik, Capurro, the Former NREC

18   President Defendant Johnson, and the NRED Chief Investigator Defendant Holle, are each being

19   sued individually, jointly, and severally, for their violations of federal and state antitrust laws, the

20   Racketeer Influenced and Corrupt Organizations Act ("RICO"), violations of 42 U.S.C. § 1983

21   ("Section 1983"), abuse of process, conspiracy, deceptive trade practices, interference with

22   business relations, and declaratory judgment.  Marcus & Millichap is pursuing actual damages,

23   consequential damages, punitive damages, pre- and post-judgment interest, and equitable relief

24   including injunctions, disgorgement, and reorganization, from and against each and all of these

25   individual Defendants.

26   ---
[2] For brevity's sake, we refer only to "brokers" in this Complaint, but each such reference should

27   be read as inclusive of real estate brokers, agents, and salespersons, as the case may be. The
individual Plaintiffs in this case are each brokers, agents, or salespersons associated with the

28   Marcus, or their affiliates, at times relevant hereto. Marcus, and their affiliates, are also affiliated
with numerous other brokers who are also included in the references to "Brokers" generally.

1       Marcus & Millichap hereby also complains, for purposes of relief only, against the

2  Nevada Real Estate Commission, a Commission of the State of Nevada comprised of brokers

3  actively competing against Marcus & Millichap who target, investigate, and discipline Marcus &

4  Millichap ("**NREC**"), and the Nevada Real Estate Division, an agency of the State of Nevada

5  responsible for oversight of the NREC ("**NRED**").

6       Finally, Marcus & Millichap hereby also complains against **John and Jane Does 1-10**,

7  whose identities are not yet known to Marcus & Millichap at this time but who shall be named

8  hereafter as their identities are later discovered.

9       For causes of action against the foregoing Defendants, Marcus & Millichap alleges as

10  follows:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

## TABLE OF CONTENTS

STATEMENT ON JURISDICTION AND VENUE ..................................................... 5

BACKGROUND AND INTRODUCTION ................................................................ 5

PARTIES ................................................................................................................. 10

GENERAL ALLEGATIONS ................................................................................... 16

    Brief Introduction to Real Estate Brokerage ................................................... 16

    Defendants' Restrictions on Nevada Brokerage Activities ............................... 17

    Defendants' Specific Actions Against Marcus & Millichap and its Brokers .......... 28

        I.    Defendants Targeted Marcus Brokers to Stop Out-of-State Brokers from Doing Business in Nevada. ......................................................... 28

        II.    Defendants Have Prosecuted and Adjudicated Criminal Charges Against Marcus Brokers Without Jurisdiction To Do So. ......................................... 30

        III.   Defendants Denied Marcus & Millichap Due Process. ............................. 32

        IV.   Defendants Targeted Marcus and its Brokers to "Send a Message," Causing Significant Harm and Damage to Marcus and its Brokers. .......... 40

    A Statement of Defendants' Non-Immunity ................................................... 41

FIRST CAUSE OF ACTION (Violation of Federal Antitrust Laws) .......................... 42

SECOND CAUSE OF ACTION (Violation of Nevada Antitrust Laws and UTPA) ... 52

THIRD CAUSE OF ACTION (RICO) ...................................................................... 56

FOURTH CAUSE OF ACTION (42 U.S.C. § 1983) .................................................. 70

FIFTH CAUSE OF ACTION (Abuse of Process) ...................................................... 73

SIXTH CAUSE OF ACTION (Conspiracy) .............................................................. 74

SEVENTH CAUSE OF ACTION (Unfair Competition/Deceptive Trade Practices) . 76

EIGHTH CAUSE OF ACTION (Interference with Business Relations) .................... 78

NINTH CAUSE OF ACTION (Declaratory Judgment) ............................................. 79

REQUEST FOR RELIEF ......................................................................................... 81

JURY DEMAND ..................................................................................................... 82

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

**STATEMENT ON JURISDICTION AND VENUE**

1.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, as the Defendants conspired, agreed, and took action to monopolize the Nevada real estate market by unlawfully enacting and enforcing regulations to exclude out-of-state real estate professionals as part of an unlawful scheme to stifle competition and thwart interstate commerce, in violation of federal laws including but not limited to the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and 42. U.S.C. § 1983 ("Section 1983"). The state or common law claims asserted in this action arise out of the same transactions and occurrences as the federal law claims. The facts supporting this federal question jurisdiction are specified in more detail throughout this Complaint, and include but are not limited to the Defendants acting in concert in connection with their roles with the NRED and NREC to restrict interstate commerce and fair competition by out-of-state brokers involving the purchase and sale of real estate in the State of Nevada.

2.     Venue is proper in this Court, as many of the transactions and occurrences at issue in this matter took place in Clark County, Nevada and harm to the Plaintiffs occurred in Clark County, Nevada.

**BACKGROUND AND INTRODUCTION**

3.     In or around 2014, members of the NREC, including at that time Former NREC President Johnson, and Defendant Holle, the Chief Investigator for the NRED, determined that the then-current state regulations did not sufficiently ensure a monopoly over the Nevada real estate brokerage industry for in-state resident Nevada-licensed brokers to the detriment and contrary to the federally-protected rights of out-of-state brokers.

4.     Driven by the desire to keep real estate commissions in the hands of in-state brokers like themselves, and out of the hands of others, the members of the NREC, all of whom were in-state brokers, collaborated and conspired with the NRED Chief Investigator to amend the regulations, to—as the NRED Chief Investigator put it—prevent out-of-state brokers from "taking business away from our Nevada licensees," which of course included the Defendants.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

5.      "[W]e want to prohibit . . . out of state licensees listing Nevada property for Nevada property owners whether the property owners are residents of Nevada or not," noted the NRED Chief Investigator.

6.      "Also," the NRED Chief Investigator continued, "we do not want out of state licensees to represent Nevada residents in the purchase of Nevada real estate for the same reason" (that is to say, because they are "taking business away from our Nevada licensees").

7.      The NRED Chief Investigator exceeded any scope of his employment with the NRED when he conspired with the NREC Defendants to take actions to unlawfully prevent out-of-state brokers from doing business in Nevada.

8.      Without any public complaint or harm, and for no public benefit, the members of the NREC, in collaboration with the NRED Chief Investigator, then amended Nevada Administrative Code § 645.185 (i) to prohibit any out-of-state broker from representing any seller of any Nevada real estate, (ii) to prohibit any out-of-state broker from representing any buyer of any Nevada real estate if the buyer is a Nevada resident, and (iii) to only allow out-of-state brokers to represent buyers of Nevada real estate if, and only if, the buyer is not a resident of Nevada and the out-of-state broker associates (and, thus, has to share commissions) with a local resident Nevada-licensed broker.

9.      The amendments to Nevada Administrative Code § 645.185 were enacted as a result of a conspiracy between members of the NREC, including Former NREC President Johnson and some or all of the NREC Defendants, and NRED Chief Investigator Holle, for the unlawful purpose of ensuring that in-state Nevada-licensed brokers receive commissions on every brokered real estate transaction in the state, and to unlawfully exclude out-of-state brokers from doing business in the state in all but the most limited circumstances, in a concerted, unlawful effort to stifle interstate commerce and thwart fair competition in their market.

10.     The amendments to Nevada Administrative Code § 645.185 were illegally enacted without any of the requisite procedural safeguards, such as notice to the public or opportunities for public comments, in violation of Nevada's Administrative Procedures Act.

106826895_4

- 6 -

11.     The amended regulation is so totally and unreasonably restrictive of interstate commerce and fair competition that it violates the Commerce Clause of the U.S. Constitution and federal antitrust laws.

12.     In or around March 2016, Former NREC President Johnson (who was President of the NREC at the time) conducted his own research and investigations into potential violations of the illegally enacted amendments, without receiving any complaint from any member of the general public prompting him to do so. Former NREC President Johnson hoped to determine the extent to which in-state Nevada real estate brokers were losing business to out-of-state brokers. He concluded, "It appears that over $200,000,000 of sales ($5,000,000 in commissions) is not going to Nevada at this time just in the Retail listing; Much larger when annualized."

13.     Former NREC President Johnson continued, "On top of this, with the other segments included there was a total of 3,129 listings, using the same perameters. [sic] Thus 12% equals 375 non licensed listings which extrapulates [sic] to over $1.4 billion of listings at any one time (annualized it probably [sic] 2 to 3 times this)."

14.     Former NREC President Johnson communicated these conclusions to NRED Chief Investigator Holle and to the other NREC Defendants.

15.     Shortly thereafter, the NRED Chief Investigator, the NREC Defendants, and the Former NREC President, began investigating, prosecuting, and disciplining Marcus Brokers for purportedly violating the unlawful regulations enacted by the NREC, all without any complaint ever having been filed against these Brokers by any member of the general public.

16.     The Defendants have targeted Marcus & Millichap and other Marcus Brokers, bringing more than thirty (30) charges of violations of the Defendants' unlawful scheme, with the sole purpose of thwarting interstate commerce and stifling fair competition in the real estate industry.

17.     The Defendants adjudicated and participated in sham administrative proceedings against Marcus Brokers, including Marcus & Millichap, in which the Defendants among other things (i) allowed criminal charges to be prosecuted despite exclusive jurisdiction lying in the district courts of the State of Nevada, (ii) denied Marcus & Millichap and other Marcus Brokers

1   due process of law by denying opportunities to present witnesses in their behalf, denying

2   discovery, denying the right to confront their accusers, and denying the right to have their charges

3   adjudicated by fair and impartial tribunals, and (iii) made findings and imposed fines and

4   penalties not supported by the evidence, and often in direct contravention to the only evidence in

5   the record, and contrary to what is permitted by the applicable statute.

6       18.    Defendants engaged in the foregoing conduct, more particularly described below,

7   with the intent to stifle interstate commerce and thwart fair competition, for their own personal

8   and financial benefits and the benefit of all other in-state Nevada-licensed brokers.

9       19.    The Defendants have made their intentions to protect in-state brokers at the

10  expense of interstate commerce and fair competition abundantly clear.

11          a.   Defendant Opatik stated she believes in-state Nevada-licensed brokers have the

12          expertise that is beneficial to "all of the people that would like to come in and work

13          and build our fair state," and she stated that to suggest that in-state brokers don't have

14          the same expertise as out-of-state brokers "is arrogant."

15          b.   Defendant Opatik later reconfirmed her beliefs, stating, "I know that within our

16          own community, real estate community, we have many experts in our commercial

17          world, in all of the state of Nevada. I don't believe that we have to go outside the state

18          to get the only qualified expert to handle anybody's commercial transaction."

19          c.   Defendant Schwartz similarly stated, "the fact of the matter is this state has

20          every expert that anybody needs to do any kind of business in. This state has people

21          who have been here and spent their lives here building this state and building the

22          commercial industry. I don't think you can find anything in any other state that hasn't

23          been accomplished here by our local brokers and real estate agents."

24          d.   Defendant Capurro stated he appreciates the Attorney General's office

25          prosecuting charges against out-of-state brokers "because [the Attorneys General are]

26          trying to protect our industry."

27          e.   Defendant Capurro later stated also, "I know you are going to take this to the

28          state court, federal court, wherever, but I hope you don't prevail. I hope you don't

1    overturn our procedure, which you call a scheme, because I think it does serve the best

2    interests of Nevadans, and it serves the best interests of our industry, in that it keeps us

3    on the straight and narrow."

4            f.   Defendant Holle explained he helped draft the amended cooperative certificate

5    regulation because the Defendants don't want out of state brokers taking away

6    business from in-state Nevada licensees.

7    20.    With these intentions in mind, the Defendants created an illegal scheme by which

8    they abused the powers and authorities of their offices to:

9            a.   Illegally concoct state regulations to financially benefit themselves and other

10   in-state Nevada-licensed brokers,

11           b.   Arbitrarily, and without complaint from any member of the public, select

12   Marcus Brokers to punish for allegedly violating the unlawful regulations,

13           c.   Investigate Marcus Brokers who became targets of Defendants' illegal scheme,

14           d.   Hold sham disciplinary hearings in which the Defendants denied the victim

15   Brokers constitutional rights to trial by jury for criminal charges brought before the

16   NREC over which the NREC has no jurisdiction, denied the victim Brokers due

17   process by denying Brokers rights to discovery and rights to call witnesses on their

18   behalf, by making findings and conclusions unsupported by evidence, and by

19   misrepresenting facts and evidence in order to achieve the results the Defendants

20   desired, and

21           e.   Impose and enforce unconstitutional disciplinary actions, including fines and

22   other penalties, in their combined unlawful effort to stifle interstate commerce and

23   thwart fair competition in their market.

24   21.    The methods used by the Defendants to exclude out-of-state brokers from the

25   Nevada real estate market are complex, broad sweeping, and extensive, but the motivation behind

26   the entire scheme is, simply, greed. Excluding out-of-state brokers from the market means more

27   business for in-state brokers such as the individual Defendants and less competition means those

28   in-state brokers can charge more for their services.

106826895_4                                    - 9 -

22.     The Defendants have mis-used their offices and exceeded their authority for their own, individual, and private financial gain and interests to the significant harm of Marcus & Millichap and other Marcus Brokers, as well as to the significant harm of consumers and the interests of fair competition and interstate commerce.

## PARTIES

23.     M&M is one of the nation's premier commercial real estate investment brokerage firms with more than 80 offices throughout the United States and Canada, more than 1,800 investment sales and financial professionals, and closing more transactions annually than any other commercial real estate investment firm. M&M of Nevada is a subsidiary of M&M. M&M does business in Nevada by and through M&M of Nevada. The actions by the Defendants alleged in this complaint have been taken against both entities. The entities' interests in this action are aligned, such that they are both collectively referred to as Marcus herein.

a.   As a leader in its real estate market, Marcus has found itself in the cross-hairs of the Defendants' illegal regulatory and disciplinary scheme.[3]

b.   Marcus Brokers have now faced more than thirty (30) investigations and/or sham disciplinary proceedings under the Defendants' unlawful regulatory and disciplinary scheme, have been fined in excess of seven hundred thousand dollars ($700,000.00) by these Defendants, and have incurred hundreds of thousands of dollars in attorneys' fees and costs defending against the Defendants' illegal scheme, which Marcus has been required to pay.

c.   The Defendants have violated Marcus & Millichap's constitutional and other rights in furtherance of the Defendants' unlawful endeavors to stifle interstate

---

[3] The Defendants have targeted Marcus through prosecution and disciplinary actions against Marcus & Millichap and other Marcus Brokers. Marcus—being an entity—can only act by and through its individual agents and representatives. Thus, a deprivation of its agents' rights is a deprivation of the entity's rights, particularly when the agents are being prosecuted (and denied constitutional rights) for their conduct while acting within their agency relationship on behalf of the entity. Moreover, the Defendants made it clear that their prosecution of Marcus & Millichap and other Marcus Brokers has been intended to harm Marcus as an entity, as the Defendants made clear they desired to send a "message" to Marcus through the Defendants' prosecution and disciplining of Marcus's Brokers. Defendants, through their targeting of and actions taken against Marcus's Brokers, have violated Marcus's constitutional and federal rights to interstate commerce, fair competition, and due process, among other things, as alleged in this Complaint.

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

commerce and thwart fair competition for the Defendants' own financial gain and interests.

    d.  The individual plaintiffs named herein have each assigned their claims to Marcus, to the extent said claims are assignable, to be prosecuted in Marcus's own name or in the agents' own name.

    e.  The individual plaintiffs named herein are, by no means, the only Marcus Brokers who have been targeted by Defendants.  Numerous other Marcus Brokers have been targeted, prosecuted, and disciplined by Defendants. For example, Marcus Broker Glen Kunofsky has been investigated, prosecuted, or disciplined by the Defendants in connection with at least six (6) Nevada properties. Kunofsky has been fined no less than three hundred one thousand two hundred twelve dollars and ninety-nine cents ($301,212.99) by the Defendants, which Marcus must pay on Kunofsky's behalf. Marcus Broker Alvin Mansour has been investigated, prosecuted, and disciplined by the Defendants in connection with at least two (2) Nevada properties. Mansour has been fined no less than thirty thousand eight hundred eleven dollars and seventy-nine cents ($30,811.79) by the Defendants, which Marcus must pay on Mansour's behalf. Numerous other Marcus Brokers such as Todd Manning have been targeted by Defendants.  Todd Manning is an in-state Nevada licensed Broker, but has been targeted, prosecuted, and disciplined by the Defendants for cooperating with and assisting out-of-state Brokers doing business in Nevada, even when trying to comply with Defendants' unlawful restrictions. Marcus has been harmed by each and every such investigation, prosecution, and disciplinary action taken against Marcus Brokers.

24.    M&M of Nevada is an affiliate of M&M and associates with Nevada-licensed Brokers, including some of the individual plaintiffs as noted below.

25.    Plaintiff White is an individual residing in Nevada and is a broker associated with Marcus or one of its affiliates.  White is a Nevada-licensed broker, but even with his Nevada license he has been investigated, prosecuted, or disciplined by the Defendants for having cooperated and associated with out-of-state brokers in connection with at least ten (10) Nevada

1    properties. White has been fined no less than thirty-six thousand one hundred twenty-five dollars

2    and eleven cents ($36,125.11) by the Defendants. White has assigned his claims to Marcus to be

3    prosecuted in Marcus's name and/or in White's own name, to the extent such claims are so

4    assignable. To the extent any claim is not assignable to Marcus, White appears on his own behalf

5    by and through the undersigned counsel.

6         26.    Plaintiff Allred is an individual residing in California and is a broker associated

7    with Marcus or one of its affiliates.  Allred has been investigated, prosecuted, or disciplined by

8    the Defendants in connection with at least three (3) Nevada properties. Allred has been fined no

9    less than three hundred one thousand six hundred thirty-nine dollars and eighty-nine cents

10   ($301,639.89) by the Defendants. Allred has assigned his claims to Marcus to be prosecuted in

11   Marcus's name and/or in Allred's own name, to the extent such claims are so assignable. To the

12   extent any claim is not assignable to Marcus, Allred appears on his own behalf by and through the

13   undersigned counsel.

14        27.    Defendant Reiss is an individual who resides in Clark County, Nevada, and is

15   President of the NREC. Reiss is an actively licensed real estate broker associated with Coldwell

16   Banker Premier Realty, doing business in the State of Nevada in competition with Marcus

17   Brokers. Defendant Reiss played an active role in the drafting and enacting of the regulatory

18   amendments at issue in this case, and/or has actively participated in furthering the Defendants'

19   illegal scheme through participation in the investigations, prosecutions, or disciplining of Marcus

20   Brokers, including Marcus & Millichap, and has benefited from the Defendants' unlawful scheme

21   as an in-state licensed broker, competitor to Marcus Brokers, and active market participant in the

22   industry Defendants regulate.

23        28.    Defendant Barrett is an individual who resides in Clark County, Nevada, and is

24   Vice President of the NREC. Barrett is an actively licensed real estate broker associated with

25   Barrett & Co, Inc., doing business in the State of Nevada in competition with Marcus Brokers.

26   Defendant Barrett played an active role in the drafting and enacting of the regulatory amendments

27   at issue in this case, and/or has actively participated in furthering the Defendants' illegal scheme

28   through participation in the investigations, prosecutions, or disciplining of Marcus Brokers,

106826895_4                                    - 12 -

1   including Marcus & Millichap, and has benefited from the Defendants' unlawful scheme as an in-

2   state licensed broker, competitor to Marcus Brokers, and active market participant in the industry

3   Defendants regulate.

4        29.    Defendant Capurro is an individual who resides in Washoe County, Nevada, and is

5   Secretary of the NREC. Capurro is an actively licensed real estate broker associated with Capurro

6   & Reid Real Estate, doing business in the State of Nevada in competition with Marcus Brokers.

7   Defendant Capurro played an active role in the drafting and enacting of the regulatory

8   amendments at issue in this case, and/or has actively participated in furthering the Defendants'

9   illegal scheme through participation in the investigations, prosecutions, or disciplining of Marcus

10   Brokers, including Marcus & Millichap, and has benefited from the Defendants' unlawful scheme

11   as an in-state licensed broker, competitor to Marcus Brokers, and active market participant in the

12   industry Defendants regulate .

13        30.    Defendant Schwartz is an individual who resides in Clark County, Nevada, and is

14   a Commissioner of the NREC. Schwartz is an actively licensed real estate broker associated with

15   Coldwell Banker Premier Realty, doing business in the State of Nevada in competition with

16   Marcus Brokers. Defendant Schwartz played an active role in the drafting and enacting of the

17   regulatory amendments at issue in this case, and/or has actively participated in furthering the

18   Defendants' illegal scheme through participation in the investigations, prosecutions, or

19   disciplining of Marcus Brokers, including Marcus & Millichap, and has benefited from the

20   Defendants' unlawful scheme as an in-state licensed broker, competitor to Marcus Brokers, and

21   active market participant in the industry Defendants regulate .

22        31.    Defendant Opatik is an individual who resides in Nye County, Nevada, and was at

23   all times relevant hereto a Commissioner of the NREC. Opatik is an actively licensed real estate

24   broker associated with Realty Executives, doing business in the State of Nevada in competition

25   with Marcus Brokers. Defendant Opatik played an active role in the drafting and enacting of the

26   regulatory amendments at issue in this case, and/or actively participated in furthering the

27   Defendants' illegal scheme through participation in the investigations, prosecutions, or

28   disciplining of Marcus Brokers, including Marcus & Millichap, and has benefited from the

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

1    Defendants' unlawful scheme as an in-state licensed broker, competitor to Marcus Brokers, and

2    active market participant in the industry Defendants regulate .

3         32.    Defendant Johnson (the Former NREC President) is an individual who resides in

4    Washoe County, Nevada and was a Commissioner of the NREC at times relevant to these

5    allegations. The Former NREC President is and was at times relevant hereto an actively licensed

6    real estate broker associated with the Johnson Group, doing business in the State of Nevada in

7    competition with Marcus Brokers. Defendant Johnson played an active role in the drafting and

8    enacting of the regulatory amendments at issue in this case, and has actively participated in

9    furthering the Defendants' illegal scheme through participation in the investigations,

10   prosecutions, or disciplining of Marcus Brokers, including Marcus & Millichap, and has benefited

11   from the Defendants' unlawful scheme as an in-state licensed broker, competitor to Marcus

12   Brokers, and active market participant in the industry Defendants regulate. Many, if not most or

13   all, of the Defendants' investigations or other actions against Marcus Brokers originated with

14   Defendant Johnson, after Johnson had left the NREC. Because of Johnson's actions as a private

15   individual, after he left the NREC, he is not eligible for any immunity that might otherwise have

16   been afforded him.

17        33.    Defendant Holle (the NRED Chief Investigator) is an individual who resides in

18   Clark County, Nevada and was at all times relevant hereto the person responsible for the

19   investigations against Marcus & Millichap Brokers as the Chief Compliance/Audit Investigator

20   for the NRED. Defendant Holle played an active role in the drafting and enacting of the

21   regulatory amendments at issue in this case, and has actively participated in furthering the

22   Defendants' illegal scheme through participation in the investigations, prosecutions, or

23   disciplining of Marcus Brokers, including Marcus & Millichap, and has benefited from the

24   Defendants' unlawful scheme due to his employment with the NRED. Defendant Holle was

25   responsible for the investigations of the Plaintiff Brokers, testified at the Brokers' hearings, and

26   recommended disciplinary actions or penalties. Defendant Holle exceeded any scope of authority

27   he may have had as an NRED investigator when he, among other things, conspired with the other

28   Defendants to create the unlawful regulatory scheme at issue in this case, and when he took action

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

106826895_4                                    - 14 -

in furtherance of that unlawful scheme including communicating disciplinary actions taken against Marcus Brokers without due process of law and recommending disciplinary action against Marcus Brokers that was neither supported by evidence nor permitted by applicable statutes. Defendant Holle was previously licensed as a real estate broker in the state of Nevada, and thus competed with Marcus & Millichap

34.     The NRED is an agency of the State of Nevada. The NRED employs Defendant Holle and oversees the NREC and each of the NREC Commissioners. The NRED has failed to supervise the individual Defendants and has allowed them to abuse their offices and exceed the scope of their authorities and to misuse their positions with the NREC and NRED to further their unlawful endeavors. The NRED is named as a Defendant in this action for purposes of relief only. The Complaint alleges that the individual Defendants acted beyond any scope of their respective employment or authorities with the State of Nevada, did not exercise due care but instead acted intentionally to misuse their positions or authority to further their unlawful endeavors, and their actions were not related to their official positions but went far beyond any such positions allowed. As such, they are each personally and individually liable for their conduct.  However, Marcus & Millichap seeks equitable relief such as injunctions, disgorgement, and reorganization against and affecting the NRED. The NRED is, thus, named as a Defendant in accordance with Nevada Revised Statute 41.031.

35.     The NREC is a commission of the State of Nevada.  The individual NREC Defendants are, or were at times relevant hereto, commissioners in the NREC.  The individual NREC Defendants have utilized the NREC and abused their positions with the NREC, exceeding the scope of their authorities and misusing their positions to further their unlawful endeavors. The NREC is named as a Defendant in this action for purposes of relief only.  The Complaint alleges that the individual Defendants acted beyond any scope of their respective employment or authorities with the State of Nevada, did not exercise due care but instead acted intentionally to misuse their positions or authority to further their unlawful endeavors, and their actions were not related to their official positions but went far beyond any such positions allowed. As such, they are each personally and individually liable for their conduct.  However, Marcus & Millichap

1  seeks equitable relief such as injunctions, disgorgement, and reorganization against and affecting

2  the NREC. The NREC is, thus, named as a Defendant in accordance with Nevada Revised Statute

3  41.031.

4      36.    John and Jane Does 1-10 are individuals who are not presently known to the

5  Plaintiffs at this time but who are now or have been participants in the Defendants' unlawful

6  schemes and objectives. These defendants may include past or future members of the NREC,

7  employees of the NRED, or supervisors, directors, managers, or others who had the authority and

8  ability to stop or prevent the other named Defendants from pursuing their unlawful endeavors but

9  either failed to do so or actively participated therein with the other named Defendants. Plaintiffs

10  will amend their pleadings to name these defendants as their identities are discovered.

11      37.    Each of the Defendants is, or has been at times relevant hereto, part of a criminal

12  enterprise intent on stifling interstate real estate brokerage and protecting their own economic

13  interests as local Nevada real estate brokers or agents, in violation of federal criminal antitrust

14  statutes.

## GENERAL ALLEGATIONS

### BRIEF INTRODUCTION TO REAL ESTATE BROKERAGE

17      38.    Many aspects of the modern commercial real estate market are national—and

18  international—in scope.

19      39.    By and large, buyers and sellers of commercial real estate are sophisticated

20  investors who often own multiple properties located in more than one state.

21      40.    Many aspects of the market for brokering commercial real estate transactions are

22  national—not local—in scope, as investors look for investment opportunities irrespective of

23  location.

24      41.    Many commercial real estate transactions involve the simultaneous transfer of

25  more than one property located in more than one state or involve clients who transact business in

26  several states. For example, one might own a portfolio of specific restaurants, student or senior

27  housing complexes, retail stores, or hotels, with locations in several states. Owners of such

28  properties generally do not want to engage individual brokers to sell each individual property in

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

their portfolio, particularly when local brokers often lack experience, knowledge, and qualified potential investors or buyers to effectively market and sell these properties.  Instead, owners look to national brokers who specialize in the types of properties being sold, who have experience, knowledge, and a nationwide pool of qualified potential investors, and who can market and sell the entire portfolio of properties in one transaction, even in multiple states. This preferred method is far more efficient and cost effective for, and results in better quality of service provided to, consumers.

42. Given the national scope of many components of commercial real estate, clients partner and form long-standing advisor relationships with firms who have the ability to broker complex, multi-state transactions, and for their strategic planning, market analysis, value analysis, trend forecasts, and counseling on an international or national scale – as opposed to forcing clients to find a new unknown, untrusted, local broker of limited resource and expertise in each state.

43. As explained in detail below, Defendants—abusing and exceeding their cloaks of authority as the sole and controlling members of the NREC at times relevant hereto, and as the chief investigator of charges prosecuted before the NREC—strictly regulate and limit Marcus's business and that of its Brokers within Nevada's borders, making it impossible for Marcus's out-of-state Brokers to do business in Nevada except in the most limited of circumstances.

**DEFENDANTS' RESTRICTIONS ON NEVADA BROKERAGE ACTIVITIES**

44. The State of Nevada regulates, investigates, and disciplines real estate brokerages within its borders.

45. Nevada statutes created two administrative entities, the Nevada Real Estate Division (NRED) and the Nevada Real Estate Commission (NREC), to oversee real estate brokerage within the state.

46. The NREC adopts regulations pertaining to real estate brokerage, including "regulations establishing standards for the operation of licensees' offices and for their business conduct and ethics," (*See* Nev. R. Stat. § 645.050(2)), and—acting under color of state law—held

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

1  criminal hearings and disciplines brokers accused of running afoul of the NREC's rules and

2  regulations. The NREC thus acts as its own lawmaker and its own judiciary.

3      47.    The NREC's authority is dictated and limited by applicable statutes, but the NREC

4  Defendants have acted far in excess of the limits imposed by statute and have abused and misused

5  their positions for unlawful purposes.

6      48.    Each of the NREC Defendants is, or was at times relevant hereto, a member of the

7  NREC. Thus, the NREC was at all times relevant hereto wholly and exclusively controlled and

8  operated by the NREC Defendants. Also, former NREC President Johnson was a controlling

9  member of the NREC at times relevant hereto, including when the subject regulations were

10  amended by the NREC. Even those NREC Defendants who may not have been members at the

11  time the subject regulations were illegally amended are culpable and liable together with the

12  NREC Defendants who did enact those regulations, as these Defendants have participated in and

13  perpetuated the fraudulent scheme since the time they became commissioners in the NREC.[4]

14      49.    The requirements to be a member of the NREC include being actively engaged in

15  a business as a Nevada real estate broker for at least three years preceding appointment or a

16  Nevada real estate broker/salesman for at least five years preceding appointment. Each of the

17  NREC Defendants and Former NREC President Johnson is a Nevada-licensed real estate broker

18  who lives and does business in Nevada.

19      50.    NRED Chief Investigator Holle is the person responsible for all investigations of

20  charges prosecuted before the NREC. Defendant Holle is motivated to participate in, and

21  financially benefits from, the Defendants' unlawful scheme, because—at a minimum—he is

22

23  [4] According to the NRED's website, as of November 1, 2018, Defendant Opatik is no longer a
    commissioner on the NREC but has been replaced by Lee R. Gurr. Defendant Opatik is named as

24  a party hereto, and is liable together with the other NREC Defendants, for her conduct while she
    was a member of the NREC. Lee R. Gurr has not been named as a defendant because, to date and

25  to the Plaintiffs' knowledge, Gurr did not participate in the unlawful enactment of the regulations
    at issue in this case nor participate in the investigation, harassment, prosecution or disciplining of

26  Marcus Brokers or otherwise engage in the anti-competitive and otherwise unlawful conduct
    alleged herein. Gurr is, however, like the other NREC Defendants, an active market participant in

27  the industry which Gurr now regulates.  In the event Gurr does participate in the investigation,
    harassment, prosecution or disciplining of Marcus Brokers or otherwise engage in the anti-

28  competitive and otherwise unlawful conduct alleged herein, this Complaint may be amended to
    state claims against Gurr as well.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

1  compensated for his investigations and participation in the Defendants' regulatory and

2  disciplinary scheme. While Holle's compensation is in the form of salary associated with his

3  position with the NRED, Holle has far exceeded any scope of authority and acted beyond what

4  could relate to his employment position by actively participating in and furthering the

5  Defendants' unlawful scheme.  Holle knowingly assists in the denials of due process to Marcus

6  Brokers and the imposition of disciplinary actions that are not supported by evidence nor

7  permitted by applicable statutes.

8      51.    By statute, the Nevada legislature has mandated that out-of-state brokers be

9  allowed to share commissions with in-state brokers working cooperatively on Nevada real estate

10  transactions. *See* Nev. Rev. Stat. § 645.280(1). The Nevada legislature placed no restrictions on

11  the types of real estate transactions for which such cooperation can occur and commissions be

12  shared.  The Nevada legislature has never given Defendants authority to restrict the types of real

13  estate transactions for which such cooperation can occur and commissions be shared.

14     52.    Yet, as alleged above, in or around 2014, members of the NREC—all of whom are

15  real estate brokers licensed by and living in the State of Nevada—and NRED Chief Investigator

16  Holle determined that the then-current state regulations did not adequately protect in-state brokers

17  from losing business and commissions to out-of-state brokers.

18     53.    The NRED Chief Investigator—exceeding his authority as an NRED

19  investigator—then collaborated and conspired with members of the NREC to amend the

20  regulations in violation of the scope of the NREC's statutory authority, to—as he put it—prevent

21  out-of-state brokers from "taking business away from our Nevada licensees."

22     54.    "[W]e want to prohibit . . . out of state licensees listing Nevada property for

23  Nevada property owners whether the property owners are residents of Nevada or not," noted the

24  NRED Chief Investigator.

25     55.    "Also," the NRED Chief Investigator continued, "we do not want out of state

26  licensees to represent Nevada residents in the purchase of Nevada real estate for the same reason"

27  (that is to say, to prevent them from "taking business away from our Nevada licensees").

28

56.     The applicable Nevada statute contains <u>no</u> such restrictions and does not authorize the NREC to impose any such restrictions.

57.     The members of the NREC—in collaboration with the NRED Chief Investigator—in an effort to unlawfully stifle fair competition and thwart interstate commerce, amended Nevada Administrative Code § 645.185 to go far beyond the applicable statutes' authorizations. The regulation now reads:

> **An out-of-state broker may not use a cooperating broker's certificate as authority to sell or attempt to sell real estate in Nevada on behalf of the owner of that real estate. Such a certificate may be used only for the purpose of allowing the out-of-state broker or salesperson to represent a person other than a resident of Nevada in the purchase of real estate in Nevada.**

Nev. Admin. Code § 645.185 (11).

58.     The amended regulation:

a.   Prohibits any out-of-state broker from representing any seller of any Nevada real estate,

b.   Prohibits any out-of-state broker from representing any Nevada resident seeking to purchase any Nevada real estate, and

c.   Only allows out-of-state brokers to represent out-of-state purchasers of Nevada real estate <u>if</u>, and <u>only if</u>, the out-of-state broker associates with (and, thus, has to share commissions with) a local resident Nevada-licensed broker.

59.     The amendments to Nevada Administrative Code § 645.185 were enacted as a result of a conspiracy between members of the NREC at that time, including Former NREC President Johnson, and NRED Chief Investigator Holle, for the unlawful purpose of ensuring that in-state Nevada-licensed brokers receive commissions on every brokered real estate transaction in the state, in nearly all circumstances to the exclusion of out-of-state brokers, in a concerted, unlawful effort to stifle interstate commerce and thwart fair competition in their market.

60.     The amendments to the regulation exceeded the scope of NREC's authority under the Nevada Administrative Procedures Act, Nev. Rev. Stat. § 233B.

106826895_4

- 20 -

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

a.   The Administrative Procedures Act authorizes state agencies to adopt "reasonable" regulations "as are necessary to the proper execution" of the agency's functions assigned to it by law, but <u>only</u> to the extent the agency is authorized by statute to do so. *See* Nev. Rev. Stat. § 233B.040(1).

b.   In this case, there is no statute that authorizes the NREC to adopt regulations to stifle interstate commerce and thwart fair competition by prohibiting out-of-state brokers from (i) representing any seller of Nevada real estate, or (ii) representing any Nevada resident in connection with the purchase of Nevada real estate.

61.   The amendments to the regulation were illegally enacted without any of the requisite procedural safeguards, such as notice to the public or opportunities for public comments, in violation of Nevada law. The Nevada Administrative Code requires,

**[B]efore adopting, amending, or repealing:**

**(a) A permanent regulation, the agency must, after receiving the approved or revised text of the proposed regulation prepared by the Legislative Counsel pursuant to NRS 233B.063:**

**(1) If it is the first hearing on the regulation, give at least 30 days' notice of its intended action, unless a shorter period of notice is specifically permitted by statute. When posted, the agency must include notice that the regulation that is posted on the Internet website of the agency 3 working days before the hearing will be the regulation considered. The agency shall ensure that the regulation to be considered at the hearing is posted on the Internet website of the agency 3 working days before the hearing.**

**(2) If it is the second or subsequent hearing on the regulation, including, without limitation, a subsequent hearing on an adopted regulation that has not been approved by the Legislative Commission or the Subcommittee to Review Regulations pursuant to NRS 233B.067, in order to approve a revision to the regulation, give at least 3 working days' notice of its intended action.**

*See* Nev. Rev. Stat. § 233B.060(1).

62.   The Administrative Procedures Act requires also,

**At the same time that an agency provides notice of any meeting or workshop relating to the adoption of a proposed regulation pursuant to this chapter . . . , the agency shall submit an electronic copy of the notice to the Director of the Legislative Counsel Bureau. The Director shall cause the notice to be posted**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

on the same day on the Internet website maintained by the Legislative Counsel Bureau.

*See* Nev. Rev. Stat. § 233.B.0601.

63.     The "notice" required by Nev. Rev. Stat. § 233B.060(1), cited above, was required to include, among other things:

> **(1) A statement of the need for and purpose of the proposed regulation.**
>
> **. . .**
>
> **(3) If the proposed regulation is a permanent regulation, a statement explaining how to obtain the approved or revised text of the proposed regulation prepared by the Legislative Counsel pursuant to NRS 233B.063.**
>
> **(4) A statement of the estimated economic effect of the regulation on the business which it is to regulate and on the public. These must be stated separately and in each case must include:**
>
> > **(I) Both adverse and beneficial effects; and**
> >
> > **(II) Both immediate and long-term effects.**
>
> **(5) A statement identifying the methods used by the agency in determining the impact on a small business prepared pursuant to subsection 3 of NRS 233B.0608.**
>
> **(6) The estimated cost to the agency for enforcement of the proposed regulation.**
>
> **. . .**
>
> **(10) The time when, the place where and the manner in which interested persons may present their views regarding the proposed regulation.**

*See* Nev. Rev. Stat. § 233B.0603(1).

64.     Pursuant to the Nevada Administrative Procedures Act, the NREC was required to afford <u>all</u> interested persons "a reasonable opportunity to submit data, views or arguments" on the agency's proposed amendments to the regulations. *See* Nev. Rev. Stat. § 233B.061(1).

65.     The NREC was required to conduct at least one workshop to solicit comments from interested persons on one or more general topics to be addressed in a proposed regulation"

1   and provide notice of the same at least 15 days before the workshop. *See* Nev. Rev. Stat. §
2   233B.061(2).

3        66.    All state agencies "that intend[] to adopt, amend or repeal a permanent regulation
4   [are required to] deliver to the Legislative Counsel a copy of the proposed regulation. The
5   Legislative Counsel [is then required to] examine and if appropriate revise the language submitted
6   so that it is clear, concise and suitable for incorporation in the Nevada Administrative Code . . . ."
7   *See* Nev. Rev. Stat. § 233B.063(1).

8        67.    The Nevada Administrative Procedures Act imposes numerous other requirements
9   and safeguards, too numerous to list in this Complaint, but including such requirements as
10  depositing a copy of the notice and text of the proposed amendment with the State Library,
11  Archives, and Public Records Administrator (Nev. Rev. Stat. § 233B.0607), determining the
12  proposed amendment's impact on small businesses (Nev. Rev. Stat. § 233B.0608) and preparing a
13  small business impact statement (Nev. Rev. Stat. § 233B.0609).

14       68.    Defendants did not comply with these requirements when enacting the subject
15  amendments to the Nevada Administrative Code.

16       69.    The result of the illegally enacted regulations is an anti-competition scheme which
17  limits out-of-state brokers trying to do any business in Nevada to just two options, though as
18  explained below neither allows out-of-state brokers to do business except in the most limited
19  circumstances:

20          a.   First, out-of-state brokers must obtain a full "license" from the State of
21          Nevada; or

22          b.   Alternatively, out-of-state brokers must obtain a "cooperative certificate" from
23          the State, but then can only do business in the most limited circumstances as outlined
24          above.

25       70.    According to Defendants, unless out-of-state brokers obtain one of these "licenses"
26  or "cooperative certificates," they cannot do brokerage business in Nevada, regardless of their
27  individual levels of expertise and knowledge, or their status as licensed brokers in any other state.

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

71.     However, the first purported option supposedly available to out-of-state brokers (obtaining a Nevada brokerage license) is not viable.

    a.   To obtain a Nevada license, the broker must not only pass a Nevada-specific exam and complete Nevada-specific continuing education courses to maintain the license, which might be reasonable restraints, the broker <u>must also</u>:

        i.   Maintain a physical place of business in Nevada, <u>and</u>

        ii.   Conduct all Nevada brokerage from that physical place of business within Nevada.

    b.   Licensees, thus, would have to be physically present in Nevada, maintaining a physical place of business and conducting all Nevada brokerage activity therein. The broker would, thus, no longer be **out-of-state**, as all Nevada brokerage activities would be conducted in the required in-state physical place of business in the State of Nevada.

    c.   Such restrictions render it impossible for out-of-state brokers to lawfully obtain and maintain an active Nevada license, while living and working "out-of-state."

    d.   The physical presence and office requirements are unlawful restraints on trade in violation of the Commerce Clause and other constitutionally and federally protected rights.

    e.   The constitutionality of this restriction if the subject of ongoing federal court proceedings involving these parties. *See Marcus & Millichap Real Estate Investment Services of Nevada, Inc. v. Chandra, et al.*, District of Nevada, 2:16-CV-01299 (the "Federal Court Proceedings"). By this proceeding, Plaintiffs challenge the Defendants' restrictions, not only on constitutional grounds but as violations of federal antitrust laws, and challenge the Defendants' conduct as violations of those antitrust laws, the RICO statute, Section 1983, and other state and common laws.

72.     The other option for out-of-state brokers to do business in Nevada is to obtain a "cooperative certificate," but even this is not available option except in the most limited circumstances.

a. Defendants have unlawfully—without public notice or opportunity for public comment—adopted and are enforcing regulations to limit use of "cooperative certificates" to only a tiny subset of certain types of transactions:

    i. Incredibly, out-of-state brokers may not "sell or attempt to sell real estate in Nevada on behalf of the owner of that real estate." *See* Nev. Admin. Code § 645.185(11). This is regardless of the residence status of the owner of the property.

    ii. Cooperative certificates "may be used **only** for the purpose of allowing the out-of-state broker or salesperson to represent a person other than a resident of Nevada in the purchase of real estate in Nevada." *See id.* (emphasis added).

b. Thus, according to Defendants, out-of-state brokers (i) cannot represent an owner of Nevada real estate who wants to sell their property, in any circumstance, regardless of whether the property owner is or is not a resident of Nevada; and (ii) cannot represent any Nevada resident in a Nevada real estate transaction, whether buying or selling real estate, in any circumstances.

c. Out-of-state brokers are permitted by the Defendants only to represent non-residents of Nevada who are seeking to purchase Nevada real estate, but even then the out-of-state broker can only do so if they affiliate (i.e., share their commissions) with an in-state Nevada broker, such as Defendants.

73. Since the NREC promulgates the rules and regulations establishing the conditions under which such certificates are issued and cancelled, it controls the circumstances in which any out-of-state broker is permitted to compete with the members of the NREC or other similarly situated in-state Nevada-licensed brokers.

74. Defendants abused those powers to prohibit any business being conducted by any out-of-state broker in Nevada in all but the most exceptionally limited circumstances.

75. The Defendants actively harass and pursue out-of-state brokers doing business in Nevada for alleged violations of the Defendants' illegally enacted and unconstitutionally

- 25 -

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

restrictive limitations on out-of-state brokerage activities, by initiating investigations against those brokers, then adjudicating and enforcing the very regulations the Defendants themselves enacted.  The Defendants pursue out-of-state brokers in furtherance of their unlawful scheme to keep out-of-state brokers from doing business in Nevada, stifling interstate commerce and thwarting unfair competition.  The Defendants, however, do not stop at pursuing out-of-state brokers.  The Defendants also actively punish in-state brokers who are willing to work or associate with out-of-state brokers, such as Plaintiff Perry White and other Marcus Brokers such as Todd Manning. The Defendants punish any outsiders and any insiders who are willing to work with them.

76.     The Defendants thus protect their own financial interests, and those of similarly situated in-state Nevada-licensed brokers, by severely and unreasonably limiting the persons whom out-of-state brokers are permitted to represent and, even in those exceptionally limited circumstances in which an out-of-state broker can do business in Nevada, requiring all out-of-state brokers to associate with in-state brokers in order to do any such business in this state.

77.     The scheme created and maintained by the Defendants is totally and unreasonably restrictive of interstate commerce in violation of the Commerce Clause of the U.S. Constitution and federal antitrust laws.

78.     The Defendants, utilizing their membership in the NREC, have adopted or enforced these and other regulations and restrictions on out-of-state brokers that are not permitted or supported by Nevada law, and that violate the U.S. Constitution and federal antitrust laws, in an effort to unlawfully restrict competition in the Defendants' brokerage market.

79.     The Defendants, and each of them, have utilized their respective positions as commissioners in the NREC, and as Chief Investigator for the NRED, to enact, investigate, and enforce rules and regulations relating to real estate brokerage in Nevada that far exceed, contradict, and undermine the authority dictated and limited by the applicable state statutes, particularly as relates to interstate or out-of-state brokerage of Nevada real estate.

80.     The Nevada legislature has, by statute, mandated that out-of-state brokers be permitted to cooperate with in-state brokers, and vice-versa, on all Nevada real estate

1   transactions. The Defendants have consciously and willfully disregarded this statutory mandate,

2   and instead worked together to preclude intra-state brokerage cooperation on all but a narrow

3   subset of real estate transactions, and to impose severe reputational and monetary penalties

4   against brokers even though those brokers operate within the parameters of the statute as enacted

5   by the Nevada legislature.

6        81.    Each of the Defendants has utilized their positions to adopt, investigate or enforce

7   regulations defining which brokers are allowed to do business in Nevada and under what

8   conditions those brokers are allowed to do business in Nevada. In other words, the Defendants

9   utilize their positions, in excess of and in contradiction to the authority granted to them, to

10  determine who may compete against them as brokers in the Nevada real estate market and to

11  define the conditions under which those brokers may compete against the Defendants.

12       82.    The Defendants have created and are actively maintaining a regulatory and

13  disciplinary scheme that so unreasonably restricts the transactions that an out-of-state broker can

14  participate in that consumers have no choice but to engage in-state brokers, and exclusively in-

15  state brokers, such as the Defendants for nearly all real estate transactions. Even in those

16  exceedingly limited circumstances when consumers can engage out-of-state brokers to do

17  business in Nevada, those brokers are required to associate with resident in-state Nevada brokers,

18  further protecting in-state licensees.

19       83.    The Defendants have thus adopted and enforced anticompetitive licensing

20  regulations that disadvantage out-of-state brokers, such as Marcus Brokers, to the benefit of in-

21  state Nevada brokers such as the Defendants.

22       84.    The Defendants have thus created a limited brokerage market within the State of

23  Nevada which drives up demand for the Defendants' brokerage services by removing would-be

24  competitors from the market, allowing the Defendants to benefit financially from the scarcity of

25  competition they have created and maintained through strict enforcement of unconstitutional and

26  unlawful restrictions on interstate commerce, to the detriment of the Defendants' would-be

27  competitors such as Marcus and its Brokers and to the detriment of the residents, property

28  owners, and buyers of property in the State of Nevada.

106826895_4                                 - 27 -

85.    The regulatory and disciplinary scheme created and maintained by the Defendants is protectionist of in-state licensed brokers on a scale unprecedented in others of the United States.

86.    The Defendants' regulatory and disciplinary scheme is designed to thwart interstate competition of real estate brokers to the sole benefit of the Defendants and other in-state Nevada-licensed real estate brokers, to the detriment of real estate owners and consumers, and to the severe harm and detriment to Marcus and its Brokers.

87.    Each of the Defendants has benefited and continues to benefit from the protectionist regulatory and disciplinary scheme they themselves created and maintain.  The NREC Defendants and the Former NREC President each benefit as in-state Nevada-licensed brokers who benefit from decreased competition and increased demands.   The NRED Chief Investigator benefits from secured and continued employment investigating charges brought as part of the unlawful enterprise.

**DEFENDANTS' SPECIFIC ACTIONS AGAINST MARCUS AND ITS BROKERS**

**I.     Defendants Targeted Marcus Brokers to Stop Out-of-State Brokers from Doing Business in Nevada.**

88.    After illegally enacting the amendment to the Nevada Administrative Code to stifle fair competition and thwart interstate commerce in the state of Nevada, Former NREC President Johnson (who was President of the NREC at the time) began conducting his own research and investigations into potential violations of the illegally enacted amendments, without receiving any complaint from any member of the general public prompting him to do so.

89.    Former NREC President Johnson concluded, "It appears that over $200,000,000 of sales ($5,000,000 in commissions) is not going to Nevada at this time just in the Retail listing; Much larger when annualized."

90.    Former NREC President Johnson continued, "On top of this, with the other segments included there was a total of 3,129 listings, using the same perameters. [sic] Thus 12% equals 375 non licensed listings which extrapulates [sic] to over $1.4 billion of listings at any one time (annualized it probably [sic] 2 to 3 times this)."

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

91.     Former NREC President Johnson communicated these conclusions to NRED Chief Investigator Holle and to the other NREC Defendants.

92.     Shortly thereafter, the NRED Chief Investigator, the NREC Defendants, and the Former NREC President (while he was in office) began investigating, prosecuting, and disciplining Marcus Brokers for purportedly violating the unlawful regulations enacted by the NREC, all <u>without any complaint ever having been filed against these Brokers by any member of the general public</u>.

      a.   Without any complaint against Marcus & Millichap from a member of the general public, the Defendants cannot justify their targeting of Marcus & Millichap and other Marcus Brokers. Defendants have targeted Marcus Brokers to stop all out-of-state brokers from doing business in Nevada.

      b.   Defendants' treatment of Marcus Brokers is systemic, expansive, and sweeping. Marcus Brokers have been targeted for investigation and/or prosecution no less than thirty (30) times since 2016, and more than $700,000.00 in fines have been imposed as punishments against these Brokers.

93.     Nevada Administrative Code § 645.680 requires the NREC to prepare and require the use of a "standard form or affidavit" for complaints against brokers.

94.     As of the date of this filing, since 2016, at least thirty (30) investigations have been initiated against no fewer than fifteen (15) of Marcus's Brokers for supposed violations of the regulatory and disciplinary scheme created and maintained by the Defendants.

95.     In each case, Marcus Brokers have—or will, for those matters still pending—requested copies of the affidavits/forms required under Nevada Administrative Code § 645.680, to know the specific allegations and complaints asserted against the Brokers.

96.     Defendants have, in every instance, refused to provide copies and/or refused to compel the NRED or its attorneys prosecuting Marcus Brokers to provide copies of the complaints against the Brokers.

97.     Defendants have refused to provide copies of the complaints because, to Marcus's knowledge, no complaint or affidavit has ever been submitted to the NREC by any member of the general public against Marcus Brokers.

98.     Instead, Defendants have, on their own and without any complaint by any member of the general public, targeted Marcus Brokers for investigation and prosecution, in violation of Nevada Administrative Code § 645.680, in order to stop out-of-state brokers from doing business in this state.

## II.     Defendants Have Prosecuted and Adjudicated Criminal Charges Against Marcus Brokers Without Jurisdiction To Do So.

99.     Marcus Brokers have been charged with violations of Nevada Revised Statute § 645.230 ("NRS § 645.230" or "Section 230"), which provides in pertinent part,

> **It is unlawful for any person, limited-liability company, partnership, association or corporation to engage in the business of, act in the capacity of, advertise or assume to act as, a: (a) Real estate broker, real estate broker-salesperson or real estate salesperson within the State of Nevada without first obtaining the appropriate license from the Real Estate Division as provided for in this chapter.**

*See* NRS § 645.230(1)(a).

100.    Section 230, however, is a criminal statute.  Discretion is afforded to the NRED to determine which charges should be prosecuted, but all such charges must be referred to a "court of competent jurisdiction," where "[t]he district attorney of each county **shall** prosecute **all** violations of this section in their respective counties in which violations occur, unless prosecuted by the Attorney General. Upon the request of the Administrator, the Attorney General shall prosecute any violation of this section in lieu of the district attorney." *See* NRS § 645.230(2), (3).

101.    Thus, the NRED has discretion on whether charges should or should not be prosecuted, and the Administrator has discretion to determine whether the District Attorney or the Attorney General will be the one to prosecute charges that are brought; there is no discretion, however, as to where the charges must be prosecuted, as "all" charges "shall" be prosecuted in a "court of competent jurisdiction." *See id.*

106826895_4

- 30 -

102.    The charges against Marcus Brokers of alleged violations of Section 230, however, have been prosecuted before the NREC, over Plaintiffs objections, without due process, and without a public trial by an impartial jury of the accused's peers, in hearings of a criminal nature, for determination by the Defendants.

103.    The NRED Chief Investigator has investigated (or been responsible for the investigations as Chief Investigator) each of the charges prosecuted before the NREC, and has testified and recommended disciplinary actions against Marcus Brokers in these hearings.

104.    The NREC Defendants, none of whom are lawyers or judges or have received any training as lawyers or judges, purport to sit as a tribunal to hear and determine whether their own regulatory and disciplinary scheme has been violated in any given instance.

105.    Defendants have thus ascribed themselves legislative, executive, and judiciary powers, all of which they utilize to prevent competition against themselves.

106.    In the course of the numerous hearings against Marcus Brokers the Defendants have allowed these **criminal** charges to be levied and prosecuted in the Defendants' own tribunal, even though exclusive jurisdiction is given to the State Courts of Nevada to hear and decide all criminal charges. *See* Nev. Rev. Stat. § 645.230.

> a.    The Defendants were informed that their jurisdiction and authority extended only to the determination of *civil* charges, not *criminal*, yet the Defendants heard and decided criminal charges against Marcus Brokers anyway. Defendants simply declared themselves to have criminal enforcement authority, despite the fact that no statute gives them such authority.

> b.    The Defendants have thus abused their positions to investigate, hear or decide criminal charges without any legal authority to do so, in violation of constitutional rights to due process and trial by jury, in the Defendants' combined unlawful effort to stifle interstate commerce and thwart fair competition in their market, and have thus mis-used their offices for their own, individual and private, financial gain and interests.

Lewis Roca
ROTHGERBER CHRISTIE
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

106826895_4

- 31 -

107.   Also, while the NREC may have jurisdiction to discipline Nevada-licensed real estate brokers, they do not have jurisdiction to discipline people or entities who are not Nevada-licensed real estate brokers.

   a.   Both the NRED and the NREC represented to the Federal District of Nevada that the NREC does not have jurisdiction and cannot reach across borders to discipline non-Nevada licensees. *See Marcus & Millichap Real Estate Investment Services of Nevada, Inc. v. Chandra, et al.*, District of Nevada, 2:16-CV-01299 (the "Federal Court Proceedings").

      i.   The federal court judge asked the NRED and NREC, through their legal counsel, questions relating to the constitutionality of the Defendants' scheme. Counsel for the NRED and NREC specifically represented, "Because Nevada as a state, can't reach its hand out of the state and discipline a California broker. . . . No agency can reach its hand into another jurisdiction and touch another licensee or not licensee." Counsel for the NRED and NREC, in those same federal court proceedings, continued, "They really don't have the jurisdiction. None of our state agencies have the jurisdiction [to discipline out-of-state brokers]. . . . Nevada has no – under our statutes and regulations, they just don't have the ability to reach into another state, . . . ."

   b.   Yet, many, if not most, of the charges prosecuted before and adjudicated by the NREC against Marcus Brokers have been against non-Nevada licensees, despite the NREC's acknowledgement in federal court that it utterly lacks jurisdiction over these out-of-state Brokers.

**III.   Defendants Denied Marcus & Millichap Due Process.**

108.   Not only were the Defendants required to make available and use standard affidavits to provide the bases for complaints against Brokers, pursuant to Nevada Administrative Code § 645.680, Marcus Brokers were entitled to receive copies of the affidavits filed against them, pursuant to the Sixth Amendment of the Constitution (all criminally accused enjoy the right

106826895_4

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

1   "to be informed of the nature and cause of the accusation [and] to be confronted with the

2   witnesses against him").

3        109.   Additionally, Marcus enjoys the same constitutional rights as its Brokers,

4   including the right to due process under the Fourth, Fifth, and Fourteenth Amendments to the

5   U.S. Constitution.

6        110.   Such due process includes, but is not limited to: (1) notice and an opportunity to be

7   heard, (2) the opportunity to confront accusers, (3) the opportunity to call witnesses, (4) that the

8   burden of proof must lie with the prosecutor, (5) the right to discovery, including discovery of all

9   documents or records in the possession or control of the prosecutor that might be relevant to the

10   charges, including the underlying affidavit that provided the bases for the charges as well as the

11   NRED's investigation reports, (6) the right to speedy and public trials by impartial juries of peers,

12   and (7) the right to not be a witness against oneself in criminal proceedings.

13        111.   Defendants have denied Marcus and its Brokers due process by failing to provide

14   notice of the charges against them, either because Defendants did not require complaints to be

15   based upon the required "standard form or affidavit" as required by Nevada Administrative Code

16   § 645.680 or, in any event, by not providing Marcus Brokers copies of any such forms or

17   affidavits if there ever were any.

18        112.   By denying Marcus Brokers access to the affidavits on which the complaints

19   against the Brokers are (supposed to be) based, Marcus Brokers have been denied the right to

20   know and confront their accusers.

21        113.   Also, the NREC Defendants and Former NREC President Johnson have clear

22   conflicts of interest with Marcus and its Brokers yet stood in judgment against them nonetheless.

23        a.   The NREC Defendants and Former NREC President Johnson are (or were) all

24   market participants directly competing with Marcus Brokers, being (or having been)

25   licensed brokers in the state of Nevada.

26        b.   Each of them has financial or other interests in limiting competition within

27   their market by keeping out-of-state brokers from doing business in their state.

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

c.  Additionally, the NREC Defendants are named defendants in the Federal Court Proceedings filed by Marcus referenced above, challenging the constitutionality of the statutes/regulations promulgated and being enforced by the NREC. *See Marcus & Millichap Real Estate Investment Services of Nevada, Inc. v. Chandra, et al.*, District of Nevada, 2:16-CV-01299.

114.  The Defendants' conflicts of interest were raised in motions to have the NREC Commissioners recuse themselves from each hearing in which Marcus Brokers were prosecuted. In every instance, the NREC Defendants denied the motions to recuse, ignoring their clear conflicts of interest.

115.  These Defendants thus sat in judgment and imposed fines and penalties against Marcus Brokers, despite the clear conflicts of interest in doing so, denying Marcus Brokers their rights to a fair and impartial adjudication of their claims.

116.  Also, in every case prosecuted before the NREC, Defendants have denied Marcus Brokers the right to call witnesses in their favor.

a.  In December 2017, counsel for Marcus's Broker called Ms. Vivenne Rakowsky, counsel for the NRED, the NREC, and the NREC Defendants in the Federal Court Proceedings, as a witness to testify about the representations made to the federal court on behalf of the NRED and the NREC regarding the NREC's lack of jurisdiction to discipline out-of-state brokers.

i.  The NREC Defendants did not allow Ms. Rakowsky to testify concerning any of the representations made to the federal court, and then forced her to be excused as a witness rather than allow her to be questioned further.

b.  Similarly, at the same hearing, counsel for Marcus's broker called an expert witness, Mr. Alan Wallace, to testify to the unconstitutional effect on interstate commerce and unlawful violations of antitrust laws the Defendants' illegal scheme has created.

i.  The NREC Defendants did not allow Mr. Wallace to testify to any question asked of him other than his basic background questions.

ii.  The NREC Defendants sustained every objection, to every question, until—just as they did with Ms. Rakowsky—they forced him to be excused as a witness rather than allow him to be questioned further.

iii. The NREC Defendants made it very clear that Marcus Brokers would not be permitted to present their defenses in any way other than as specified by the NREC Defendants.

iv.  Defendant Reiss specifically threatened, "I know though that what we need to do is hear this matter and if you're not going to do it the way that I'm suggesting, it's going to be very difficult."

v.   After the NREC Defendants made unequivocally clear that the broker would not be able to present his defense, counsel for the broker requested to make an offer of proof in order to preserve the record for appeal.

vi.  Incredibly, the NREC Defendants refused to allow even the offer of proof, denying the right to simply preserve a record for appeal.

vii. Ms. Rowe, counsel for the broker, specifically asked, "What I would like to do is make an offer of proof." Defendant Reiss responded, "No." Ms. Rowe asked again, "May I make an offer of proof?" And Defendant Reiss responded again, "No."

viii. Defendant Reiss excused Mr. Wallace, without permitting any further questions or offers of proof, then forced the parties to move to closing statements—forcibly resting the broker's case in chief—even though the broker had "numerous" additional witnesses to call in his defense. Defendant Reiss stated, "In that case, we're going to move to closing statements." Ms. Rowe stated, "I want to be clear for the record, I have numerous witnesses." Defendant Reiss replied, "I thought I made myself clear." He then instructed a four-minute time limit be imposed on closing arguments.

c. Marcus Brokers were thus denied the opportunity to call witnesses to testify on their behalf.

d. Notably, in contrast to the NREC Defendants denying Marcus Brokers' rights to call witnesses in their defense, the NREC Defendants allowed the prosecutor to call Marcus's legal counsel as a fact witness, over objection, and forced him to testify even though his only connection to these cases is as legal counsel.

e. The NREC Defendants engaged in the same, or similar, conduct throughout all of the proceedings against Marcus Brokers, denying them the right to call witnesses or refusing to allow witnesses to answer questions.

117. In many cases prosecuted before the NREC, Defendants have unfairly shifted the burden of proof from the prosecution to Marcus Brokers. Defendants have done so by making negative inferences against Marcus Brokers when the prosecution has failed to present evidence, and by finding against Marcus Brokers when there is no evidence to support the finding, when the NREC should have found the prosecution failed to meet its burdens.

118. Indeed, the NREC Defendants and Former NREC President have made findings and conclusions, and imposed penalties, against Marcus Brokers which were unsupported by evidence or even directly contradicted by evidence, including on recommendations by Defendant Holle.

a. The civil statute under which Marcus Brokers were prosecuted before the Defendants authorized the NREC to impose administrative fines <u>only</u> equal to the greater of $5,000 or the amount of the commission <u>actually received</u> by the individual Brokers in connection with the subject transaction. *See* Nev. Rev. Stat. § 645.235.

b. In several cases in which Marcus Brokers were prosecuted, the Defendants imposed hundreds of thousands of dollars in fines and penalties based on allegations of commissions received, when no such commissions were ever actually received and there was no evidence of any such commissions ever actually being received.

c. In at least one case, the Defendants imposed hundreds of thousands of dollars in fines even after acknowledging they did not know the amount of the commission

actually received. In other words, there was no evidence to support the amount of the fine, the Defendants were aware of this lack of evidence, and the Defendants imposed the fine any way.

d.   In several cases, the Defendants imposed fines after precluding Marcus Brokers from even addressing the questions of the amount of the commissions actually received.

e.   The Defendants have thus utilized their positions as commissioners on the NREC to make findings and impose fines and penalties in clear violation and in excess of their jurisdiction and authority, in their combined unlawful effort to stifle interstate commerce and thwart fair competition in their market, and have thus mis-used their positions for their own, individual and private, financial gain.

119.   Further, the Defendants have made findings and conclusions, and imposed penalties, against Marcus Brokers even after acknowledging on the record that the required *mens rea* requirements had not been met.

a.   The civil statute under which Marcus Brokers were prosecuted before the Defendants required a finding that the Brokers had "knowingly" violated the statute. *See* Nev. Rev. Stat. § 645.235.

b.   In at least one case in which a Marcus Broker, was prosecuted, the Defendants acknowledged on the record that the broker being prosecuted did not "knowingly" engage in any prohibited conduct. Yet, the Defendants proceeded to find the statute had been violated and imposed penalties against the Broker.

c.   In several cases, the Defendants imposed fines after precluding Marcus Brokers from even addressing the questions of the amount of commissions actually received.

d.   The NREC Defendants and Former NREC President have thus utilized their positions as commissioners on the NREC to make findings and impose fines and penalties in clear violation and in excess of their jurisdiction and authority, in their combined unlawful effort to stifle interstate commerce and thwart fair competition in

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

1     their market, and have thus mis-used their public office for their own, individual and

2     private, financial gain.

3        120.    Moreover, the Defendants have denied Marcus Brokers rights of due process,

4 including fair and impartial adjudication of the claims asserted against them, rights to call

5 witnesses and present evidence on their respective behalves, the right to appear through counsel

6 and/or to not testify in criminal proceedings, and the right to have criminal charges determined by

7 juries of their peers.

8        a.    In the civil and criminal proceedings in which Marcus Brokers have been

9 prosecuted before the Defendants, the burden of proof has rested with the State of

10 Nevada. Yet, the Defendants repeatedly made negative inferences against Marcus

11 Brokers due to the <u>lack</u> of evidence. For example, in December 2017, a hearing was

12 held before the Defendants on charges asserted against five (5) Marcus Brokers. The

13 complaints served on these Brokers "specifically informed" these parties "that [they]

14 have the right to appear and be heard in [their defense], either personally <u>or through</u>

15 <u>[their] counsel of choice</u>." When these parties exercised their rights to appear through

16 counsel, the Defendants made negative findings against these parties due to their

17 "failure" to appear and give testimony.

18        b.   The Fifth Amendment of the U.S. Constitution prohibits any person from

19 being compelled to be a witness against himself in any criminal case.

20        c.   The charges against Marcus Brokers included *criminal* charges, as alleged

21 above.

22        d.   The Defendants violated the constitutional rights of Marcus Brokers by making

23 negative inferences against them for their "failures" to testify at the hearings in which

24 *criminal* charges were being prosecuted against them.

25        e.   Also, the Fifth and Fourteenth Amendments of the U.S. Constitution prohibits

26 depriving a person of life, liberty, or property without due process of law.

27        f.   "The due process clauses in our constitutions assure an accused the right to

28 introduce into evidence any testimony or documentation which would tend to prove

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

1    the defendant's theory of the case." *Vipperman v. State*, 96 Nev. 592, 596 614 P.2d

2    532, 534 (Nev. 1980) (citations omitted).

3         g.   Yet the Defendants repeatedly and on numerous occasions refused to permit

4    Marcus, its Brokers, or their legal counsel to present evidence, make arguments, or

5    otherwise defend against the claims asserted against them, in violation of their

6    constitutional rights to due process.

7         h.   The Sixth and Fourteenth Amendments to the U.S. Constitution guaranty the

8    rights of criminal defendants to a public trial, to an impartial jury, and to know their

9    accusers.

10        i.   As previously alleged, the charges against Marcus Brokers included *criminal*

11    charges.

12        j.   Yet, the parties prosecuted before the Defendants were given no public trial, no

13    impartial jury (or, no jury whatsoever, for that matter), and no knowledge of their

14    accusers, in violation of their constitutional rights. In addition, Defendants knowingly

15    permitted the prosecution to withhold potentially exculpatory evidence from Marcus

16    Brokers, in violation of their constitutional rights.

17        k.   The Defendants have thus utilized their positions as commissioners on the

18    NREC to make findings and impose fines and penalties in clear violation of

19    constitutional rights, in their combined unlawful effort to stifle interstate commerce

20    and thwart fair competition in their market and have thus mis-used their public office

21    for their own, individual and private, financial gain.

22        121.   Most recently, the Defendants—acting by and through Defendant Holle—sent

23    notice to one Marcus Broker that the Broker had been found in violation of Defendants' unlawful

24    scheme, and a fine imposed against that Broker, without any hearing or due process of law

25    whatsoever.

26        122.   The hearing and adjudicative process created and employed by the Defendants is

27    thus a fraud and a sham wherein the Defendants seek to give the appearance of a fair and lawful

28    administrative tribunal but in fact is an unlawful and exploitive enterprise by which the

1  Defendants are attempting to stifle interstate commerce and thwart fair competition in their

2  market, mis-using their public office for their own, individual and private, financial gain.

3      **IV.    Defendants Targeted Marcus and its Brokers to "Send a Message," Causing

4          Significant Harm and Damages to Marcus and its Brokers.**

5      123.    In every instance in which the Defendants have rendered a decision on a charge

6  levied against Marcus Brokers, the Defendants have found that the Defendants' own regulatory

7  and disciplinary scheme has been violated, even when the Defendants have specifically

8  acknowledged on the record that the requisite *mens rea* element of the offense has not been

9  established.

10      a.   The Defendants have done so for their own, individual and private financial

11          gain, mis-using their public office, in an effort to stifle interstate commerce and thwart

12          fair competition in their market and have thus mis-used their public office for their

13          own, individual and private, financial gain.

14      124.    The Defendants have, to date, imposed fines and penalties against Marcus Brokers,

15  totaling more than seven hundred thousand dollars ($700,000.00), which Marcus is liable to pay

16  on behalf of its Brokers.

17      a.   The Defendants have done so for their own, individual and private financial

18          gain, mis-using their public office, in an effort to stifle interstate commerce and thwart

19          fair competition in their market and have thus mis-used their public office for their

20          own, individual and private, financial gain.

21      125.    Marcus has been damaged and harmed, not only by the more than $700,000.00 in

22  fines and penalties imposed by the Defendants in the course of their illegal scheme, but also by

23  lost profits and business opportunities resulting from the significant and burdensome time Marcus

24  and its Brokers have been compelled to devote to fighting against the Defendants' illegal scheme

25  as well as hundreds of thousands of dollars in attorneys' fees and costs incurred by Marcus, for

26  itself and on behalf of its Brokers, defending against and fighting the Defendants'

27  unconstitutional and otherwise unlawful regulatory and disciplinary scheme.

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

126.     Defendants have taken the aforementioned actions, and others to come to light in discovery, against Marcus and its Brokers to send a message that Defendants will protect in-state Nevada-licensed brokers by stopping interstate commerce and fair competition at Nevada's borders.

     a.   For example, in December 2017, when discussing the penalties to be imposed in the charges levied against Marcus's broker, Gordon Robert Allred, NRED Chief Investigator Holle recommended a fine of $497,760, plus costs, be imposed by the NREC.  The NREC Defendants discussed possibly imposing a fine in an amount less than the $497,760 recommended by Defendant Holle, during which Defendant Opatik made clear she would not agree to the lesser amount being discussed, saying the lesser amount doesn't "even send[] the message." Defendant Barrett continued the discussion, saying, "So do I think that a message needs to be sent, absolutely.  Do I think $497,760 is the message? Yeah, I think pretty strongly that that might be the message . . . ."

### A STATEMENT ON THE DEFENDANTS' NON-IMMUNITY

127.     Marcus & Millichap understands, without conceding, that the Defendants might be considered public officials—despite their status as market participants and competitors to Marcus Brokers—and thus might attempt to invoke judicial or other immunity. The immunity afforded public officials generally, however, has certain limits including extending only to those officers of the state who exercise due care in the exercise of their authority.

128.     Even if the Defendants could be considered public officials, Defendants have not exercised due care but have instead mis-used their offices for their own personal gains and interests, utilizing fraudulent conduct to harm Marcus and its Brokers in the Defendants' unlawful efforts to stifle interstate commerce and thwart fair competition.

129.     No immunity is afforded individuals with respect to intentional torts or bad-faith misconduct, both of which are expressly at issue in this matter.

130.     With respect to the antitrust claims set forth herein, specifically, because the Defendants are market participants and competitors to Marcus Brokers, they are not afforded

state-action immunity because the Defendants' restraints on inter-state commerce and fair competition are not clearly articulated nor affirmatively expressed as state policy, and whatever policy basis there might be for such restraints is not actively supervised by the state.

131.    Defendants, despite their status as public officers or employees, are not immune from personal liability because no Nevada law clearly articulates the policy being furthered by the Defendants' unlawful endeavors (and, in fact, NREC's policy directly violates Nevada law as enacted by the legislature), because no state official actively supervised or supervises the Defendants in their unlawful endeavors, and because the Defendants have utilized their cloaks of State authority to engage in a criminal enterprise for which no state immunity is available.

132.    "[P]ublic officials can be held individually liable for actions taken while holding public office and/or misuse of their public office." *See LaFlamboy v. Landek*, 587 F.Supp. 2d 194, 937 (N.D. Ill. 2008) (citing *United States v. Warner*, 498 F.3d 666, 696 (7th Cir. 2007), *United States v. Edmond*, 935 F.2d 1511, 1512 (7th Cir. 1991).

133.    The individual Defendants have been sued in their individual capacities as having utilized and misused their employment, positions, or authorities, gone far beyond the scope of their offices, and engaged in activity not related to their positions, when they pursued their unlawful endeavors for their own private and personal gains.  They are not entitled to any immunity that otherwise might have been afforded them.  The NREC and NRED have each been named as a Defendant in this action for purposes of relief only.  Marcus & Millichap seeks equitable relief such as injunctions, disgorgement, and reorganization against and affecting the NRED and NREC. The NRED and NREC are, thus, named as Defendants in accordance with Nevada Revised Statute 41.031.

134.    All conditions precedent for the prosecution of this action have been satisfied.

## FIRST CAUSE OF ACTION
### (Violation of Federal Antitrust Laws)

135.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

136.   The federal Sherman Antitrust Act prohibits, and deems criminal, all combinations or conspiracies to restrain or monopolize interstate commerce, or to attempt to restrain or monopolize interstate commerce, as follows:

> **Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.  Every person who shall make a contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine . . . or by imprisonment . . . or by both said punishments, in the discretion of the court.**

**15 U.S.C. § 1.**

> **Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine . . . or by imprisonment . . . or by both said punishments, in the discretion of the court.**

**15 U.S.C. § 2.**

137.   **Combination and Conspiracy:** The Defendants have each combined and conspired to restrain or monopolize interstate commerce—namely interstate real estate brokerage—or attempted to restrain or monopolize interstate commerce, by and through the conduct alleged above including but not limited to:

a.   Enacting, maintaining, and enforcing rules, regulations, and other restrictions on interstate commerce exceeding the scope and authority permitted to Defendants, in violation of the Commerce Clause of the U.S. Constitution, which vests power to regulate interstate commerce solely and exclusively with the United States Congress;

b.   Defendants' email communications reveal their motive in amending the applicable regulations was "to prohibit . . . out of state licensees listing Nevada property for Nevada property owners whether the property owners are residents of Nevada or not," and also to prohibit out-of-state licensees from representing "Nevada residents in the purchase of Nevada real estate," because out-of-state brokers had been and would be "taking business away from our Nevada licensees."

c.  The Defendants combined and conspired to exceed their authority as prescribed by statute to limit the circumstances in which out-of-state brokers may participate in the Nevada real estate market, when applicable statutes do not provide for any such limits.

d.  The Defendants then combined and conspired to amend the Nevada regulations without complying with the requirements of the Nevada Administrative Procedures Act.

e.  The Defendants further combined and conspired to target Marcus Brokers— without complaint from any member of the general public, the genesis of the targeting of Marcus & Millichap having come from Defendant Johnson, and despite clear conflicts of interests as the NREC Defendants are direct competitors with Marcus & Millichap and are defendants in ongoing court proceedings brought against them by Marcus & Millichap (the Federal Court Proceedings)—for investigation and discipline, to deny Marcus Brokers due process of law and other constitutional rights, and to impose fines and other disciplinary actions not supported by evidence, not permitted by law, and not in accordance with the victim broker's constitutional rights.

f.  The Defendants combined and conspired to enter findings and conclusions and impose fines and penalties against Marcus Brokers in violation of those parties' constitutional rights and protections against self-incrimination in criminal proceedings;

g.  The Defendants combined and conspired to enter findings and conclusions and impose fines and penalties against Marcus Brokers without affording these parties constitutional rights to due process, fair and public trials, juries of their peers;

h.  The Defendants combined and conspired to enter findings and conclusions and impose fines and penalties against Marcus Brokers which are not authorized by statute and are not supported by evidence or are even contradicted by the evidence; and

i.  The Defendants combined and conspired to operate their illegal and unlawful, fraudulent scheme by which the Defendants mis-use their public offices for their own,

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

individual and private gains and interests by taking the foregoing actions with the intent to and for the purpose of stifling interstate commerce and thwarting fair competition in their business market.

138.    The Defendants' combined efforts and conspiracies to create, prosecute, enforce, and uphold their illegal scheme is a combination and conspiracy to restrain trade and commerce in violation of the Sherman Act, as it is an agreement, conspiracy, or combination between two or more entities—including each of the NREC Defendants, Former NREC President Johnson, and NRED Chief Investigator Holle, if not also between the NRED and the NREC—to restrain trade and commerce.

139.    **The Relevant Markets:**  The Defendants' combinations and conspiracies affect commerce in the following relevant markets:

a.   Out-of-state brokers are not permitted to represent any Nevada resident in connection with the marketing and sale of that Nevada resident's Nevada real estate;

b.   Out-of-state brokers are not permitted to represent any Nevada resident in connection with the purchase of any Nevada real estate; and

c.   Out-of-state brokers are permitted <u>only</u> to represent non-Nevada residents in connection with the purchase of Nevada real estate <u>if</u> the out-of-state broker cooperates with an in-state Nevada broker.

d.   Defendants have thus excluded the Nevada real estate market from the national and international real estate markets, isolating this market to the sole benefit of in-state brokers and to the significant harm of bout out-of-state brokers <u>and</u> property owners and consumers; thus, competition and commerce has been restrained and stifled by Defendants in the market for real estate brokerage services within the state of Nevada, which also has the ancillary impact of restraining commerce and stifling competition in the overall Nevada real estate market.

140.    **Restraint on Trade and Commerce Among the States:**  The Defendants' regulatory scheme is an illegal and unreasonable restraint of trade and commerce, protecting in-state Nevada licensed brokers from competing with out-of-state brokers, as it:

106826895_4

- 45 -

a.   Prohibits out-of-state brokers from obtaining Nevada real estate licenses unless the broker maintains a physical office in Nevada and does all work relating to Nevada real estate from that physical office (thus requiring the brokers to be in-state brokers rather than out-of-state), and

b.   Prohibits out-of-state brokers from doing any brokerage business within Nevada except in the most limited circumstances (namely, representing out-of-state buyers of Nevada real estate, and—even then—only if the out-of-state broker obtains a cooperative certificate and associates with an in-state broker).

c.   Out-of-state brokers are not allowed to represent sellers of Nevada real estate.

d.   Out-of-state brokers are not allowed to represent Nevada residents buying Nevada real estate.

e.   There exists a demonstrable nexus between the Defendants' unlawful activities and interstate commerce, as Defendants are unlawfully preventing out-of-state brokers from doing business in the State of Nevada.

141.   The Defendants have perpetuated their illegal scheme in an effort to monopolize the Nevada real estate industry on behalf of all similarly situated in-state Nevada-licensed real estate brokers to the detriment and exclusion of all out-of-state brokers.

142.   The Defendants' unlawful restraints are unreasonable restraints of trade per se as well as under a rule of reason analysis.  The Defendants acted with intent to harm or restrain competition.  The Defendants have caused actual harm to competition.  And the restraints are unreasonable considering any justifications or pro-competitive effects of the restraint.  Any justifications for restricting out-of-state brokerage of Nevada real estate can easily be satisfied by less restrictive means, such as requiring out-of-state brokers to submit to the jurisdiction of Nevada state courts and the NRED and to associate or cooperate with Nevada licensees who will ensure transactions are completed in accordance with local laws and rules.

143.   The restraints are broad-sweeping and apply—as written—to all out-of-state brokers, affecting the entire real estate industry and not just the plaintiffs.

144.   **Antitrust Injury:** The harm caused by the Defendants is not just to a single competitor, Marcus and its Brokers, but to the competitive process and to competition itself, as all out-of-state brokers are affected by Defendants' unlawful scheme.

145.   The Defendants' illegal scheme has harmed the Marcus Entities and Brokers, including Marcus & Millichap, by among other things the Defendants' repeated investigations, prosecutions, and disciplinary actions, including but not limited to loss of goodwill and reputation, lost productivity and profits, interference with business relations and contracts, the imposition of more than $700,000 in fines and penalties, and unreasonably restricted—or altogether prohibited—access to customers and business.

146.   The Defendants' illegal scheme has harmed the real estate brokerage industry as a whole, including Marcus and its Brokers, by among other things monopolizing the Nevada real estate industry in favor of in-state Nevada brokers to the exclusion of out-of-state brokers.

147.   Consumers, including Nevada property owners looking to sell their properties and Nevada resident potential buyers who might purchase Nevada real estate, have been harmed by the Defendants' illegal scheme by among other things being deprived of the right to utilize the brokerage services of out-of-state brokers and decreased competition among brokers resulting therefrom.

a.   Owners of Nevada real estate can <u>only</u> use resident Nevada licensed brokers to market and sell their Nevada properties.

b.   Nevada residents seeking to purchase Nevada real estate can <u>only</u> use resident Nevada licensed brokers to purchase Nevada properties.

c.   Consumers pay higher commissions to in-state Nevada brokers because of the decreased competition in the brokerage industry.

d.   Consumers cannot retain brokers who may have special education, knowledge, experience, or expertise; greater access to potential buyers; greater resources, marketing capabilities, or proprietary technology or business techniques; or are otherwise preferred; because those brokers are excluded from the market.

e.   Brokers who service commercial real estate markets often must have particular expertise and are called upon to guide consumers through complex transactions involving numerous properties in more than one state. For example, Plaintiff Gordon Allred is the preeminent broker of hospitality properties such as hotels in all of Marcus & Millichap, and he may well be the preeminent hospitality broker in the entire country.  Property owners specifically retain Mr. Allred to sell their hospitality properties because of his skills, expertise, reputation, and name recognition.  Buyers of hospitality properties specifically look for properties with Mr. Allred's name associated with it, because of his reputation. By the Defendants' conduct, however, Mr. Allred is precluded from representing any seller of Nevada real estate, even though he may be the nation's foremost expert in brokering hospitality properties. Consumers and property owners in Nevada are denied access to the brokers of their choice as a result of Defendants' unlawful scheme.

148.   The Clayton Antitrust Act grants a private, civil right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," and such person "may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy . . . ." 15 U.S.C. § 15(a).

a.   While damages, interest, costs, and fees are not recoverable under this specific statute against local government, officials, or employees acting in their official capacity (*see* 15 U.S.C. § 35), "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws . . . ." *See* 15 U.S.C. § 26.

149.   Because these Defendants have mis-used their public offices and have acted outside the scope of any authority or jurisdiction afforded to them or to the NREC/NRED, they are not protected by the limitations on remedies available to injured persons against public officials or employees *acting in their official capacities* set forth in 15 U.S.C. § 35.  Marcus &

1  Millichap should thus be entitled to all remedies and damages available to it, including without

2  limitation damages, interest, costs and fees.

3       a.   Accordingly, Marcus & Millichap is entitled to an award of damages against

4  the Defendants for, among other things:

5       i.   The more than $700,000.00 in fines and penalties imposed by the

6  Defendants in the course of their illegal scheme, trebled as permitted by the

7  federal antitrust laws;

8       ii.   The attorneys' fees and costs incurred defending against the

9  investigations, prosecutions, disciplinary actions, and court proceedings and

10  appeals necessitated by, relating to, or resulting from the Defendants' scheme,

11  trebled as actual damages, as permitted by the federal antitrust laws;

12       iii.   The Plaintiffs' lost profits and business opportunities, including (i) lost

13  profits and opportunities resulting from the significant and burdensome time

14  Marcus and its Brokers have been compelled to devote to fighting against the

15  Defendants' illegal scheme, and (ii) lost profits and opportunities resulting

16  from Plaintiffs not being allowed to do business in Nevada without being

17  subject to the Defendants' illegal scheme, trebled as actual damages, as

18  permitted by the federal antitrust laws;

19       iv.   A disgorgement of all proceeds received by each of the Defendants as a

20  result of their illegal restraints on trade, including but not limited to

21  commissions they received in the course of their business(es) that might have

22  gone to any out-of-state broker had the out-of-state broker been permitted to do

23  business in this state without the Defendants' illegal scheme; and

24       v.   Attorneys' fees and costs incurred pursuing this action.

25      150.   In any event, even if damages against these Defendants are limited under 15

26  U.S.C. § 35, Marcus & Millichap is entitled to injunctive and equitable relief including but not

27  limited to an order from this court:

28

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

106826895_4

- 49 -

a. Declaring the statutes and regulations that provide the foundation for the Defendants' scheme illegal in violation of federal antitrust laws;

b. Vacating all prior findings, conclusions, penalties, fines, and other orders or decisions entered by the Defendants against Marcus Brokers;

c. Enjoining any and all pending or future proceedings before these Defendants or the NREC;

d. Enjoining these Defendants and any or all others from investigating, prosecuting, adjudicating, or taking any disciplinary actions, against Marcus Brokers for alleged violations of the Defendants' illegal scheme; and

151.   Reorganizing the NREC and prohibiting these Defendants from taking any part in the NREC or its investigations, prosecutions, hearings, or decisions.

152.   **State-Action Immunity Does Not Apply:** The U.S. Supreme Court has held that when—as is the case with the NREC—a controlling number of the decision makers on a state licensing board are active participants in the occupation regulated by the board, then state-action immunity applies <u>only</u> if the restraint is "one clearly articulated and affirmatively expressed as state policy" <u>and</u> the policy is "actively supervised by the state." *See North Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, at 1111, 191 L.Ed.2d 35 (2015). "Limits on state-action immunity are most essential when the State seeks to delegate its regulatory power to active market participants, . . . . active market participants cannot be allowed to regulate their own markets free from antitrust accountability. *See id.* "[P]rohibitions against anticompetitive self-regulation by active market participants are an axiom of federal antitrust policy." *See id.* "[A] state board on which a controlling number of decision makers are active participants in the occupation the board regulates must satisfy [the] active supervision requirement." *See id.* at 1114.

153.   Each of the NREC Defendants and Former NREC President is an active market participant, competing with Marcus Brokers, in the real estate industry they regulate.

a. To be a commissioner on the NREC, one "must have been actively engaged in business as a Nevada real estate broker for at least three (3) years preceding

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

appointment or a Nevada real estate broker/salesman for at least five (5) years preceding appointment.

  b. Defendant Reiss is an actively licensed real estate broker associated with Coldwell Banker Premier Realty, doing business in the State of Nevada.

  c. Defendant Barrett is an actively licensed real estate broker associated with Barrett & Co, Inc, doing business in the State of Nevada.

  d. Defendant Capurro is an actively licensed real estate broker associated with Capurro & Reid Real Estate, doing business in the State of Nevada.

  e. Defendant Schwartz is an actively licensed real estate broker associated with Coldwell Banker Premier Realty, doing business in the State of Nevada.

  f. Defendant Opatik was an actively licensed real estate broker associated with Realty Executives in Action, doing business in the State of Nevada, while Opatik was a commissioner with the NREC.

  g. Former NREC President Johnson is and was at times relevant hereto an actively licensed real estate broker associated with the Johnson Group, doing business in the State of Nevada.

  154. The unconstitutional restraints on trade and commerce illegally enacted and selectively enforced against Marcus Brokers by the Defendants is not "articulated and affirmatively expressed as state policy." Indeed, the protectionist restraint flies in the face of clearly articulated state policy to break down barriers to free trade and commerce. *See, e.g.,* Nevada Unfair Trade Practice Act, Nev. Rev. Stat. § 598A.030(1) (clearly describing the Nevada Legislature's findings in favor of free and open markets); Nevada Senate Bill 69 (2017); Nev. Rev. Stat. § 622.530. The licensing requirements at issue here are not mandated by Nevada state law and go beyond the regulatory authority granted to the NREC by the State.

  155. The restraints are not subject to state supervision. Indeed, Defendants enacted the amendments to the regulation without abiding by any of the procedures and safeguards required by Nevada's Administrative Procedures Act, as discussed above, preventing any and all checks-and-balances or state supervision that might have prevented Defendants' illegal scheme. The

1   NREC is not a prototypical state agency but is a "specialized board dominated by active market

2   participants" comprised of actively-licensed real estate brokers competing with Marcus Brokers,

3   and therefore must be subject to active supervision by the State.

**SECOND CAUSE OF ACTION**
**(Violation of Nevada Antitrust Laws / Nevada Unfair Trade Practice Act)**

6      156.   Marcus & Millichap hereby incorporates by this reference each of the foregoing

7   allegations and restates the same as though set forth fully herein.

8      157.   Nevada's Legislature has enacted antitrust laws that are to be "construed in

9   harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. §

10   598A.050.

11      158.   Nevada's antitrust statute is codified in Chapter 598A of the Nevada Revised

12   Statutes and is known as the Nevada Unfair Trade Practice Act.

13      159.   Consistent with the federal antitrust laws, the Nevada Legislature found:

14   **(a) The free, open and competitive production and sale of commodities and**
15   **services is necessary to the economic well-being of the citizens of the State**
     **of Nevada.**

16   **(b) The acts of persons which result in the restraint of trade and commerce:**

17
18        **(1) Act to destroy free and open competition in our market**
          **system and, thereby, result in increased costs and the**
19        **deterioration in quality of commodities and services to**
          **the citizens of the State of Nevada.**
20
21        **(2) Result in economic hardships in the form of increased**
          **consumer prices and increased taxes upon many citizens**
22        **of the State of Nevada least able to bear such increased**
          **costs.**

23   Nev. Rev. Stat. § 598A.030(1).

24      160.   The Nevada Legislature also enacted the policy of the state toward open markets,

25   as follows:

26   **It is the policy of this state and the purpose of this chapter to:**

27   **(a) Prohibit acts in restraint of trade or commerce, except where properly**
28   **regulated as provided by law.**

**(b) Preserve and protect the free, open and competitive nature of our market system.**

**(c) Penalize all persons engaged in such anticompetitive practices to the full extent allowed by law, in accordance with the penalties provided herein.**

Nev. Rev. Stat. § 598A.030(2).

161.    The Nevada Unfair Trade Practice Act prohibits contracts, combinations, and conspiracies in restraint of trade. Nev. Rev. Stat. § 598A.060(1).

   a.   Such prohibited conduct includes "raising, depressing, fixing, pegging or stabilizing the price of any commodity or service." *See id.* at (1)(a).

      i.   Defendants have engaged in price fixing by unlawfully excluding competitors from doing business in the Defendants' market, allowing Defendants and similarly situated in-state brokers to charge more for their services than a free and open market would have allowed.

   b.   Such prohibited conduct also includes "Monopolization of trade or commerce in this State, including, without limitation, attempting to monopolize or otherwise combining or conspiring to monopolize trade or commerce in this State.

      i.   Defendants have attempted to monopolize or otherwise combined and conspired to monopolize trade or commerce in this State, for themselves and similarly situated in-state brokers, by excluding out-of-state brokers from doing business in Nevada in all but the most limited circumstances.

162.    The Nevada Unfair Trade Practice Act grants a private right of civil action to "[a]ny person threatened with injury or damage to his or her business or property by reason of a violation of any provision of this chapter," or "[a]ny person injured or damaged directly or indirectly in his or her business or property by reason of a violation of the provisions of this chapter." Nev. Rev. Stat. § 598A.210(1) and (2).

163.    Persons threatened with injury or damage by reason of a violation of this statute may sue for injunctive relief. Nev. Rev. Stat. § 598A.210(1).

164.    Persons actually injured or damaged, directly or indirectly, by reason of a violation of this statute "shall recover treble damages, together with reasonable attorney fees and costs." Nev. Rev. Stat. § 598A.210(2).

165.    As set forth above in connection with Plaintiffs' First Cause of Action, the Defendants' illegal scheme has harmed the Marcus Entities and Brokers, including Marcus & Millichap, by among other things the Defendants' repeated investigations, prosecutions, and disciplinary actions, including but not limited to loss of goodwill and reputation, lost productivity and profits, interference with business relations and contracts, the imposition of more than $700,000 in fines and penalties, and unreasonably restricted—or altogether prohibited—access to customers and business.

166.    The Defendants' illegal scheme has harmed the real estate brokerage industry as a whole, including Marcus and its Brokers, by among other things monopolizing the Nevada real estate industry in favor of in-state Nevada brokers to the exclusion of out-of-state brokers.

167.    Consumers, including Nevada property owners looking to sell their properties and Nevada resident potential buyers who might purchase Nevada real estate, have been harmed by the Defendants' illegal scheme by among other things being deprived of the right to utilize the brokerage services of out-of-state brokers and decreased competition among brokers resulting therefrom.

    a.    Owners of Nevada real estate can only use resident Nevada licensed brokers to market and sell their Nevada properties.

    b.    Nevada residents seeking to purchase Nevada real estate can only use resident Nevada licensed brokers to purchase Nevada properties.

    c.    Consumers pay higher commissions to in-state Nevada brokers because of the decreased competition in the brokerage industry.

    d.    Consumers cannot retain brokers who may have special education, knowledge, experience, or expertise; greater access to potential buyers; greater resources, marketing capabilities, or proprietary technology or business techniques; or are otherwise preferred; because those brokers are excluded from the market.

106826895_4                                     - 54 -

e.  Brokers who service commercial real estate markets often must have particular expertise and are called upon to guide consumers through complex transactions involving numerous properties in more than one state.  By the Defendants' conduct, consumers in Nevada are denied access to these brokers.

168.  Marcus & Millichap is entitled to an award of damages against the Defendants for, among other things:

a.  The more than $700,000.00 in fines and penalties imposed by the Defendants in the course of their illegal scheme, trebled as permitted by the Nevada antitrust laws;

b.  The attorneys' fees and costs incurred defending against the investigations, prosecutions, disciplinary actions, and court proceedings and appeals necessitated by, relating to, or resulting from the Defendants' scheme, trebled as actual damages, as permitted by the Nevada antitrust laws;

c.  The Plaintiffs' lost profits and business opportunities, including (i) lost profits and opportunities resulting from the significant and burdensome time Marcus and its Brokers have been compelled to devote to fighting against the Defendants' illegal scheme, and (ii) lost profits and opportunities resulting from Plaintiffs not being allowed to do business in Nevada without being subject to the Defendants' illegal scheme, trebled as actual damages, as permitted by Nevada's antitrust laws;

d.  A disgorgement of all proceeds received by each of the Defendants as a result of their illegal restraints on trade, including but not limited to commissions they received in the course of their business(es) that might have gone to any out-of-state broker had the out-of-state broker been permitted to do business in this state without the Defendants' illegal scheme; and

e.  Attorneys' fees and costs incurred pursuing this action, as permitted by the Nevada antitrust laws.

169.  Marcus & Millichap is entitled to injunctive relief including but not limited to an order from this court:

a.  Declaring the regulations that provide the foundation for the Defendants' scheme illegal in violation of Nevada's antitrust laws;

b.  Vacating all prior findings, conclusions, penalties, fines, and other orders or decisions entered by the Defendants against Marcus Brokers;

c.  Enjoining any and all pending or future proceedings before these Defendants or the NREC;

d.  Enjoining these Defendants and any or all others from investigating, prosecuting, adjudicating, or taking any disciplinary actions, against Marcus Brokers for alleged violations of the Defendants' illegal scheme; and

e.  Prohibiting these Defendants from taking any part in the NREC or its investigations, prosecutions, hearings, or decisions.

170.  The Nevada Unfair Trade Practice Act does not apply to administrative agencies of the State of Nevada which have jurisdiction over the subject matter of their actions. *See* Nev. Rev. Stat. § 598A.040. While this statute may not apply to the NREC or the NRED, as agencies of the State, the statute does apply to each of the individual Defendants in their personal capacities.  The individual Defendants hereto have been named in their individual capacities for their actions far exceed the scope of any authority given to them on account of their employment or positions with the NREC or NRED, and they have acted outside the bounds of any immunity or protection that might otherwise have applied.

## THIRD CAUSE OF ACTION
### (Violation of The Racketeer Influenced and Corrupt Organizations Act)

171.  Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

172.  The Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-68 ("RICO"), was enacted in 1970 as an attempt, through comprehensive legislation, to combat organized crime affecting interstate commerce, though the statute is in no way limited to what one might hold as traditional notions of "organized crime."

173.  Broadly, RICO prohibits four types of activities:

a.   Using or investing in any "enterprise" engaged in or affecting interstate commerce any income derived from a "pattern of racketeering activity;"

b.   Using a "pattern of racketeering activity" to acquire or maintain any interest in or control over an "enterprise" engaged in or affecting interstate commerce;

c.   Conducting or participating in the affairs of an "enterprise" engaged in or affecting interstate commerce through a "pattern of racketeering activity;" and

d.   Conspiring to do any of the foregoing.

*See* 18 U.S.C. § 1962.

174.   The statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4).

175.   The NREC is an "enterprise" as the term is defined in RICO, as it is a government agency and therefore is an association or other legal entity constituting an "enterprise" under the RICO statute.

176.   The NREC Defendants are all members of the NREC and are thus members of an "enterprise" as the term is defined in RICO.

177.   Former NREC President Johnson was at times relevant hereto also a member of NREC, and therefore was a member of the same "enterprise," and has continued to associate with the illegal "enterprise" through his conduct even after he was no longer a member of the NREC, including but not limited to his investigations against Marcus Brokers and his causing Marcus Brokers to be targeted, investigated, prosecuted, and disciplined by the NREC.

178.   NRED Chief Investigator Holle is employed by the same division of the Nevada State Government as, and works hand-in-hand with, the NREC. He participates in the illegal "enterprise" by among other things investigating the charges prosecuted before the NREC and testifying in those proceedings. Accordingly, NRED Chief Investigator Holle is also a member of the same "enterprise," being a member of this group of individuals associated in fact even if not a legal entity.

106826895_4

179.    Each of the Defendants is a culpable person under the RICO statute, separate and distinct from the criminal enterprise that is the NREC as it is being operated by the Defendants.

180.    The statute defines "racketeering activity" very broadly, including a litany of specifically enumerated activities, including but not limited to mail or wire fraud (18 USC §§ 1341, 1343). *See* 18 USC § 1961(1).

181.    The RICO statute defines "pattern of racketeering activity" as requiring only two acts of racketeering activity, so long as a "pattern" of activity is shown. *See* 18 U.S.C. § 1961(5).

182.    The Defendants have engaged in a "pattern of racketeering activity" as evidenced through their initiation of at least thirty (30) investigations, prosecutions, and/or disciplinary actions against Marcus Brokers, including multiple investigations, prosecutions, or disciplinary actions against the Marcus & Millichap Brokers:

a.    Plaintiff White is a Nevada-licensed broker, but even with his Nevada license he has been investigated, prosecuted, or disciplined by the Defendants for having cooperated and associated with out-of-state brokers in connection with at least ten (10) Nevada properties. White has been fined no less than thirty-six thousand one hundred twenty-five dollars and eleven cents ($36,125.11) by the Defendants. Other similarly situated, in-state Nevada-licensed Marcus Brokers have likewise been investigated, prosecuted, or disciplined by Defendants for having cooperated and associated with out-of-state brokers doing business in Nevada. For example, Todd Manning is an in-state Broker who has been investigated, prosecuted, and fined for having cooperated with out-of-state Brokers, even when trying to do so within Defendants' unlawful restrictions.

b.    Plaintiff Allred has been investigated, prosecuted, or disciplined by the Defendants in connection with at least three (3) Nevada properties. Allred has been fined no less than three hundred one thousand six hundred thirty-nine dollars and eighty-nine cents ($301,639.89) by the Defendants.

c.    Other Marcus Brokers have also been targeted, prosecuted, and disciplined by Defendants. Marcus Broker Glen Kunofsky has been investigated, prosecuted, or

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

disciplined by the Defendants in connection with at least six (6) Nevada properties. Kunofsky has been fined no less than three hundred one thousand two hundred twelve dollars and ninety-nine cents ($301,212.99) by the Defendants. Marcus Broker Alvin Mansour has been investigated, prosecuted, and disciplined by the Defendants in connection with at least two (2) Nevada properties. Mansour has been fined no less than thirty thousand eight hundred eleven dollars and seventy-nine cents ($30,811.79) by the Defendants.

d. Marcus Brokers have been targeted more than thirty (30) times and fined more than seven hundred thousand dollars ($700,000) by these Defendants.

e. Not only does the sheer volume and number over the course of more than two years establish a "pattern," the process utilized by the Defendants also follows the same "pattern":

i.      One of the Defendants identifies a real estate transaction involving a Marcus Broker which they believe is not in compliance with the Defendants' illegal restrictions on out-of-state brokerage;

ii.      Defendant Holle then causes a "cease and desist" letter to be sent to the Broker and to Marcus, demanding that the Broker and Marcus come into compliance with the illegal restrictions, and Defendant Holle causes an investigation to be opened against the Broker with written notice to be sent to the Broker and Marcus;

iii.      When Defendant Holle or his investigator(s) determine the Defendants' restrictions on commerce and competition have been violated, the NRED then files a complaint with the NREC to commence prosecution against the Broker for the alleged violations of the illegal restrictions and the NREC Defendants cause notice of the complaint and obligations to respond to be served on the Broker;

iv.      The NREC Defendants then hold a hearing where the Broker is prosecuted for alleged violations of the illegal restrictions; and

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

v.    The NREC Defendants then determine the Broker has violated the Defendants' illegal restrictions and impose fines, penalties or other disciplinary actions against the Broker.

f.    The Defendants have engaged in this same pattern of investigation, prosecution, and discipline in each of the thirty (30) instances in which Marcus Brokers have been investigated, prosecuted, or disciplined, including in each instance in which the plaintiff Brokers have been investigated, prosecuted, and disciplined.

183.    The Defendants have engaged in a pattern of racketeering activity, spanning the course of years—including since at least 2016 and in at least thirty (30) separate instances with respect to Marcus Brokers—by, at a minimum, engaging in mail and wire fraud, as set forth in detail below. This pattern constitutes the Defendants' regular way of doing business which projects into the future indefinitely until this Court puts a stop to it.

184.    **Mail Fraud (18 USC § 1341):**

a.    Federal law makes it a crime punishable by up to twenty years in prison whenever a person:

**[H]aving devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, place[s] in any post office or authorized depository for mail matter, any matter or thing whatsoever to be sent or delivered by the Postal Service . . . [or] any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing . . . .**

*See* 18 USC 1341.

b.    The essential elements of mail fraud are: (1) a scheme to defraud, (2) involving the use of the mail, (3) for the purpose of executing the scheme. *See United States v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991).

c.    As alleged above, the Defendants have devised and are operating a scheme or artifice to defraud consumers and participants in the real estate market, under the fraudulent pretense of protecting consumers and reasonably regulating industry, when the Defendants' true and actual intent was to monopolize the industry for themselves

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

and others similarly situated and thereby profit from increased commissions and decreased competition.

  i. For example, NRED's mission statement reads as follows, "[T]o protect the public and Nevada's real estate sectors by fairly and effectively regulating real estate professionals through licensure, registration, education and enforcement." *See* http://red.nv.gov/Content/Contact/About_Us/; *last visited* Nov. 12, 2018. The NREC is administered by and subject to the administrative supervision of the Director of the NRED. *See* Nev. Rev. Stat. §§ 645.045, .050. Thus, the NREC operates under the same mission statement as the NRED.

  ii. The Defendants' however, have usurped the NREC and misused their authority to harm the public and Nevada's real estate sectors by stifling fair competition and thwarting interstate commerce as part of their fraudulent scheme to monopolize the real estate industry and exclude out-of-state brokers.

  iii. In furtherance of this fraudulent scheme, the Defendants among other things:

   1. Made false accusations of criminal and other misconduct against Marcus Brokers;

   2. Wrongfully held themselves out has having authority to take the actions they took, including authority to adjudicate criminal prosecutions;

   3. Conducted sham hearings, trials, or other regulatory or administrative proceedings wherein the Defendants deprived Marcus Brokers their constitutional rights to due process and public trial of criminal complaints by juries of their peers and to be free from self-incrimination

  d. As evidenced by the Defendants' own statements made in connection with promulgating and enforcing the regulations, the purpose of the Defendants' fraudulent

106826895_4

scheme was not to protect customers or reasonably regulate the industry, but to exclude out-of-state brokers from the Nevada real estate market in an unlawful effort to stifle interstate commerce, to thwart fair competition, and to mis-use their public offices for their own, private and individual gains. Specifically, as to Marcus & Millichap, the Defendants' efforts have been to exclude and drive out Marcus Brokers from the Nevada real estate market.

e. The Defendants acted at all times relevant hereto with intent to defraud Marcus & Millichap, all other Marcus Brokers targeted by Defendants, other brokers who have similarly been targeted, and even the property owners and consumers in the State of Nevada.

f. Marcus Brokers, and other out-of-state brokers, relied on the representations that the NREC and NRED, and the regulations and statutes applicable thereto, were intended to protect consumers and merely reasonably regulate industry, when they engaged in business in the State of Nevada and, specifically to Marcus and its Brokers, submitted to the jurisdiction of the NREC for the adjudication of the complaints prosecuted against them (albeit subject to objections). Had Marcus & Millichap known the Defendants' true and actual intent of their regulatory scheme was to stifle interstate commerce and thwart fair competition in an effort to monopolize the Nevada real estate industry, or that the Defendants would misuse their status as commissioners of the NREC or employees of the NRED for their own personal interests and gain, the Plaintiffs would not have done business in the State of Nevada nor submitted to the jurisdiction of the NREC.

g. This illegal and fraudulent scheme is operated by the Defendants for their own financial gain in the form of decreased competition from out-of-state brokers and increased business opportunities for themselves and others similarly situated.

h. In furtherance of their fraudulent scheme, and for the purpose of executing the same, the Defendants have made use of the United States Postal Service by depositing mail to be sent or delivered, and/or taking or receiving therefrom, certain

communications, complaints, briefing, notices, orders, and other matters. While the actual mailings sent by or on behalf of the Defendants in furtherance of their fraudulent scheme are too numerous to identify individually, at least the following specific mailings are identified with particularity for purposes of pleading this claim:

| Date of Mailing | Subject | Sender | Recipient | Nature of Mailing |
|---|---|---|---|---|
| April 5, 2016 | NRED v. Allred | D. McClosky, NRED Investigator | Plaintiff Allred | NRED Investigator under supervision or control of Defendant Holle mailed notice of investigation against Plaintiff Allred |
| April 7, 2016 | Cease and Desist Order | T. Thompson, Administration Section Manager | Plaintiff Allred | NRED mailed Plaintiff Allred an Order to cease and desist engaging in brokerage activity in Nevada |
| April 26, 2016 | NRED v. White | D. McClosky, NRED Investigator | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of investigation against Plaintiff White |
| May 31, 2016 | NRED v. Mansour | D. McClosky, NRED Investigator | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of investigation against Alvin Mansour |
| May 31, 2016 | NRED v. White | D. McClosky, NRED Investigator | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of investigation against Plaintiff White |
| June 1, 2016 | Cease and Desist Order | Joseph Decker, NRED Administrator | Alvin Mansour | NRED mailed Alvin Mansour an Order to cease and desist engaging in brokerage activity in Nevada |
| June 29, 2017 | NRED v. Kunofsky | D. McClosky, NRED Investigator | Glen Kunofsky c/o S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of determination of violation against Glen Kunofsky |
| July 6, 2016 | NRED v. Kunofsky | D. McClosky, NRED Investigator | Glen Kunofsky | NRED Investigator under supervision or control of Defendant Holle mailed notice of |

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

| Date of Mailing | Subject | Sender | Recipient | Nature of Mailing |
|---|---|---|---|---|
| | | | | investigation against Glen Kunofsky |
| Dec. 16, 2016 | NRED v. ALLRED | D. McClosky, NRED Investigator | Plaintiff Allred c/o S.Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of determination of violation against Plaintiff Allred |
| June 20, 2017 | NRED v. Mansour | D. McClosky, NRED Investigator | Alvin Mansour c/o S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle mailed notice of determination of violation against Alvin Mansour |
| July 11, 2017 | NRED v. Mansour | R. Hardin, NREC Coordinator | Alvin Mansour | NREC mailed notice of its decision to fine Alvin Mansour $30,811.79 with copies sent to the NREC Defendants |
| Sept. 20, 2017 | NRED v. Manning | D. McClosky, NRED Investigator | Todd Manning | NRED Investigator under supervision or control of Defendant Holle mailed notice of investigation against Todd Manning |
| Oct. 24, 2017 | NRED v. Manning | D. McClosky, NRED Investigator | Todd Manning c/o S. Mott | NRED Investigator under supervision or control of Defendant Holle mailed notice of intent to file complaint before the NREC against Todd Manning |
| Feb. 12, 2018 | NRED v. Manning | R. Hardin, NREC Coordinator | Todd Manning c/o S. Mott, Marcus | NREC mailed notice of hearing scheduled before the NREC against Todd Manning |
| Feb. 16, 2018 | NRED v. Kunofsky | R. Hardin, NREC Coordinator | Glen Kunofsky c/o S. Mott, Marcus | NREC mailed notice of complaint against Glen Kunofsky to be heard by the NREC |
| Feb. 16, 2018 | NRED v. White | R. Hardin, NREC Coordinator | Plaintiff White c/o S. Mott, Marcus | NREC mailed notice of complaint against Plaintiff White to be heard by the NREC |
| April 23, 2018 | NRED v. Manning | R. Hardin, NREC Coordinator | Todd Manning | NREC's decision to fine Todd Manning $1,947.52 was mailed to Todd Manning |
| July 31, 2018 | NRED v. Kunofsky | R. Hardin, NREC Coordinator | Glen Kunofsky | NREC's decision to fine Glen Kunofsky $301,212.99 was mailed |

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

| Date of Mailing | Subject | Sender | Recipient | Nature of Mailing |
|---|---|---|---|---|
| | | | | to Glen Kunofsky |
| July 31, 2018 | NRED v. White | R. Hardin, NREC Coordinator | Plaintiff White | NREC's decision to fine Plaintiff White $13,688.99 was mailed to Plaintiff White |

i.  The Defendants have thus repeatedly and over the course of several years utilized the United States mail system to perpetuate their fraudulent scheme against Marcus and its Brokers, in violation of federal law.

185.  **Wire Fraud (18 USC § 1343):**

a.  Federal law makes it a crime punishable by up to thirty years in prison to:

**[H]aving devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . .**

*See* 18 USC 1343.

b.  As alleged above, the Defendants have devised and are operating a scheme or artifice to defraud by way of sham hearings, trials, or other regulatory or administrative proceedings to deprive Marcus Brokers of constitutional rights, to stifle interstate commerce, to thwart fair competition, and to mis-use their public offices for their own, private and individual gains.

c.  This illegal and fraudulent scheme is operated by the Defendants for their own financial gain in the form of decreased competition from out-of-state brokers and increased business opportunities for themselves and others similarly situated.

d.  The Defendants acted at all times relevant hereto with intent to defraud Marcus & Millichap, all other Marcus Brokers targeted by Defendants, other brokers who have similarly been targeted, and even the property owners and consumers in the State of Nevada.

e.  In furtherance of their fraudulent scheme, and for the purpose of executing the same, the Defendants have transmitted by wire in interstate commerce certain writings

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

including communications, complaints, briefing, notices, and other matters. While the actual electronic communications sent by or on behalf of the Defendants in furtherance of their fraudulent scheme are too numerous to identify individually, at least the following specific electronic communications are identified with particularity for purposes of pleading this claim:

| Date | Subject | Sender | Recipient | Nature of Communication |
|---|---|---|---|---|
| June 25, 2014 | Coop Cert Regulation Revision | Defendant Holle | G. Anderson | Defendant Holle communicated via email the Defendants' intentions to prohibit out-of-state brokers from listing Nevada property for Nevada property owners because it "is taking business away from our Nevada licensees." |
| March 14, 2016 | Concern ref CO-OP Broker | Defendant Johnson | Defendant Holle | Defendant Johnson emailed Defendant Holle the research Johnson had conducted regarding out-of-state brokers doing business in Nevada. |
| April 5, 2016 | RE: Gordon Allred | Defendant Holle | Plaintiff White | Defendant Holle emailed Plaintiff White about "violators" of the Defendants' regulatory scheme, saying "the violators are not going to appreciate it . . . . lol" and saying the out-of-state brokers' business should have been White's, as an in-state broker |
| April 6, 2016 | RE: Gordon Allred | Defendant Holle | S. Mott, Marcus | Defendant Holle emailed S. Mott in interstate communications stating that the investigation against Plaintiff Allred was assigned to one of Holle's investigators. |
| April 6, 2016 | RE: Gordon Allred | D. McCloskey | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle and at Holle's direction emailed Marcus a copy of a notice of investigation against Plaintiff Allred in interstate |

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

| Date | Subject | Sender | Recipient | Nature of Communication |
|------|---------|--------|-----------|-------------------------|
| | | | | communications. |
| April 26, 2016 | RE: NRED vs. ALLRED – Case No. 2016-1734 | D. McCloskey | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle emailed Marcus in interstate communications requesting additional documents to investigate Plaintiff Allred. |
| Dec. 5, 2016 | Complaint NRED vs. GERMAIN Case No. 2106-4108 | D. McCloskey | S. Mott, Marcus | NRED Investigator under supervision or control of Defendant Holle emailed Marcus in interstate communications providing notice of open investigations against Marcus Brokers. |
| Nov. 29, 2017 | FW: Marcus & Millichap Agent Administrative Hearings | R. Hardin, NREC Coordinator | C. Coyle | NREC Coordinator emailed counsel for Marcus and its Brokers denying requests for continuances and instructing Brokers to appear before the NREC. |
| Sept. 7, 2018 | FW: Scott Ruble Listing | Defendant Holle | S. Mott, Marcus | Defendant Holle emailed S. Mott in interstate communications to make inquiries in furtherance of an investigation against a Marcus Broker |

f.   The Defendants have thus repeatedly and over the course of several years transmitted by wire in interstate commerce communications in furtherance of their unlawful endeavors and so engaged in wire fraud against Marcus and its Brokers, in violation of federal law.

186.   The RICO statute provides a private right of civil action to "[a]ny person injured in his business or property by reason of violation of section 1962". *See* 18 USC § 1964(c).

187.   This Court has jurisdiction to prevent and restrain violations of section 1962 by, among other things:

**[O]rdering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering**

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

**dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.**

*See* 18 USC § 1964(a).

188.    Persons injured by reason of a violation of section 1962 are entitled to "recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." *See* 18 USC § 1964(a).

a.    Accordingly, Marcus & Millichap is entitled to an award of damages against the Defendants for among other things:

i.    The more than $700,000.00 in fines and penalties imposed by the Defendants in the course of their illegal scheme, trebled as permitted by the RICO statute;

ii.    The attorneys' fees and costs incurred defending against the investigations, prosecutions, disciplinary actions, and court proceedings and appeals necessitated by, relating to, or resulting from the Defendants' scheme, trebled as actual damages, as permitted by the RICO statute;

iii.    The Plaintiffs' lost profits and business opportunities, including (i) lost profits and opportunities resulting from the significant and burdensome time Marcus and its Brokers have been compelled to devote to fighting against the Defendants' illegal scheme, and (ii) lost profits and opportunities resulting from Plaintiffs not being allowed to do business in Nevada without being subject to the Defendants' illegal scheme, trebled as actual damages, as permitted by the RICO statute;

iv.    A disgorgement of all proceeds received by each of the Defendants as a result of their illegal restraints on trade, including but not limited to commissions they received in the course of their business(es) that might have

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE

gone to any out-of-state broker had the out-of-state broker been permitted to do business in this state without the Defendants' illegal scheme;[5] and

v.   Attorneys' fees and costs incurred pursuing this action.

189.   Marcus & Millichap is entitled to injunctive and equitable relief including but not limited to an order from this court:

a.   Declaring the statutes and regulations that provide the foundation for the Defendants' scheme illegal in violation of federal antitrust laws;

b.   Vacating all prior findings, conclusions, penalties, fines, and other orders or decisions entered by the Defendants against Marcus Brokers;

c.   Enjoining any and all pending or future proceedings before these Defendants or the NREC;

d.   Enjoining these Defendants and any or all others from investigating, prosecuting, adjudicating, or taking any disciplinary actions, against Marcus Brokers for alleged violations of the Defendants' illegal scheme; and

e.   Reorganizing the NREC and prohibiting these Defendants from taking any part in the NREC or its investigations, prosecutions, hearings, or decisions.

190.   Marcus & Millichap is entitled to an award of treble damages for the harm suffered as a result of the Defendants' RICO violations; as well as an order from this court that the Defendants be divested of any interests in their illegal enterprise, namely the NREC as it is illegally and fraudulently operated by the Defendants; that the Defendants be enjoined from any future activities or participating in such enterprise or any other similar enterprise; and that the *NREC be dissolved* or reorganized.

---

[5] Marcus & Millichap recognizes there is an apparent split of authority amongst Circuit Courts of Appeals with regard to whether equitable relief such as disgorgement is available to remedy RICO violations. Such remedies are available with regard to federal antitrust violations. Some older Circuit Court decisions appear to have determined that such equitable remedies are not available in connection with RICO violations. However, more recent Circuit Court decisions appear to allow disgorgement and other equitable remedies in connection with RICO violations. Even if disgorgement and similar equitable remedies have not been expressly permitted in connection with RICO claims in the Ninth Circuit, Plaintiffs advocate that such relief should be permitted, as recognized in the more recent Circuit Court decisions.

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

### FOURTH CAUSE OF ACTION
#### (Violations of 42 U.S.C. § 1983)

191.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

192.    Section 1983 provides in pertinent part,

**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]**

42 U.S.C. § 1983.

193.    As set forth above, Marcus and its Brokers each hold federally-protected rights to fair competition and interstate commerce, as well as due process of law, trial of criminal charges before juries of their peers, and other rights described above.  These federally-protected rights include the following:

a.   Protections against contracts, combinations, or conspiracies to restrain or monopolize interstate commerce set forth in the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq.*;

b.   The right to have interstate commerce regulated and governed exclusively by the United States Congress, as set forth in the Commerce Clause, U.S. Constitution, Article 1, Section 8, Clause 3;

c.   Protections against criminal enterprises and patterns of racketeering activities affecting interstate commerce, as set forth in the RICO statute, 18 U.S.C. §§ 1961-68;

d.   Protections against mail or wire fraud, as set forth in 18 U.S.C. §§ 1341, 1343;

e.   Protections of a speedy and public trial by an impartial jury on all criminal charges, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor, as set forth in the Sixth Amendment to the U.S. Constitution;

f.   Protections of due process, as set forth in the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution; and

g.   Protections against being compelled in criminal cases to be a witness against himself, as set forth in the Fifth Amendment to the U.S. Constitution.

194.   These federally-protected rights were clearly established prior to the events at issue in these proceedings, and the Defendants knew or should have known these rights existed at all times relevant hereto, as these rights would have been clear to any reasonable public official engaged in the conduct alleged herein.

195.   As set forth in detail above, the Defendants, acting under color of state law and abusing their positions, deprived Marcus and its Brokers of their federally-protected rights to fair competition and interstate commerce, as well as due process of law, trial of criminal charges before juries of their peers, and other rights described above.

196.   The Defendants deprived Marcus and its Brokers of these rights intentionally, for the purpose of stifling interstate real estate brokerage, thwarting fair competition, and mis-using their public offices for their own, individual and private financial gains and interests.

197.   The Defendants not only deprived Marcus and its Brokers of these rights, but did so in combination with each other as part of a conspiracy by which the Defendants acted to accomplish their unlawful objectives of illegally stifling interstate commerce and thwarting fair competition for their own, individual and private financial gains and interests.

198.   The Defendants acted maliciously and wantonly, prompted by ill will and spite toward Marcus and its Brokers in particular but also toward all other out-of-state brokers and brokerage firms.

199.   The Defendants consciously desired to violate federal rights of interstate commerce, fair competition, due process, and other federally-protected rights alleged herein, all of which the Defendants were aware.

200.   The Defendants knew their conduct was unlawful, but continued in their illegal scheme to injure Marcus and its Brokers.

201.   The Defendants acted recklessly or with callous disregard for Marcus 's rights and those of its Brokers.

202.   The Defendants have not performed classic adjudicatory functions.  The Defendants were not independent, but rather were market participants competing with Marcus Brokers and self-interested in the outcomes of the proceedings, and the processes invoked by the Defendants did not involve standard procedural safeguards such as the right to due process, the right to compel witnesses, cross-examination of witnesses, discovery, exclusion of hearsay, and a standard burden of proof. Moreover, the Defendants were responsible for adopting the subject restrictions and adjudicated the alleged violations of those restrictions.  The Defendants thus acted both as lawmaker and monitor of compliance, combining functions in a manner inconsistent with the role of the judiciary for which immunity might otherwise be permitted.

203.   In so doing, the Defendants have harmed and damaged Marcus and its Brokers in amounts to be proven at trial but exceeding $700,000.00.  Additionally, Marcus —for itself and on behalf of its Brokers—has incurred hundreds of thousands of dollars in attorneys' fees and costs defending against Defendants' illegal scheme, and is expected to incur hundreds of thousands of dollars in additional attorneys' fees and costs as it continues to fight against Defendants' illegal scheme.

204.   The harm and damage suffered, and attorneys' fees and costs incurred, by Marcus would not have occurred but for Defendants' conduct.

205.   Marcus is entitled to an award of compensatory damages for the harm suffered and attorneys' fees and costs incurred as a result of the Defendants' Section 1983 violations.

206.   Further, punitive damages should be awarded in favor of Marcus & Millichap and against the Defendants, and each of them, to punish Defendants for their illegal conduct and to deter the Defendants and others like the Defendants from committing similar illegal conduct in the future.

/ / / /

/ / / /

# FIFTH CAUSE OF ACTION
## (Abuse of Process)

207.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

208.    Under Nevada law, the tort of abuse of process occurs when one engages in a willful act in the use of the legal process which is not proper in the regular conduct of the proceeding with an ulterior purpose other than resolving a legal dispute.

209.    While the tort might generally arise when a party or an attorney abuses legal process, here the Defendants have engaged in the unique conduct of abusing process while acting as adjudicators and investigators/witnesses (as opposed to being a party or an attorney).

210.    The Defendants have engaged in willful acts in the use of legal process which are not proper in the regular conduct of the proceedings by, among other things, allowing criminal charges to be levied, tried, and determined in the Defendants' administrative tribunal when the Defendants have no jurisdiction or authority to try or determine criminal charges; denying parties their constitutional rights to due process, trial by jury, and to not be witnesses against themselves; by making findings and conclusions, and imposing penalties against Marcus Brokers, which are unsupported by evidence or even contradicted by evidence; by making findings and conclusions, and imposing penalties, against Marcus Brokers, even after acknowledging on the record that the required *mens rea* requirements for such findings, conclusions, and penalties have not been met; by conducting fraudulent and sham hearings and trials against Marcus Brokers; and by mis-using their public offices in their unlawful efforts to stifle interstate commerce and thwart fair competition for the Defendants' own, individual and private financial gains.

211.    The Defendants have acted as a regulatory body while allowing *criminal* complaints to be prosecuted and adjudicated in their administrative tribunal, and have simultaneously acted as lawmaker, prosecutor, judge, and jury, in their proceedings against Marcus Brokers.

212.    The Defendants have engaged in these willful acts with the ulterior purposes of stifling interstate commerce and thwarting fair competition for the Defendants' own, individual and private financial gains, rather than for the purpose of resolving legal disputes.

213.    Marcus & Millichap has been significantly harmed by the Defendants' abuse of process, and is entitled to an award of all damages suffered as a result of the Defendants' illegal scheme, including but not limited to the more than $700,000 the Defendants have forced Marcus & Millichap to pay in fines and penalties (or in bonds as matters are on appeal), but also the hundreds of thousands of dollars in attorneys' fees and costs Marcus & Millichap has incurred defending against Defendants' illegal scheme, and is expected to incur as it continues to fight against Defendants' illegal scheme, and all other remedies and relief available to Marcus & Millichap under the law.

### SIXTH CAUSE OF ACTION
#### (Conspiracy)

214.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

215.    In Nevada, civil conspiracy is actionable as a tort when there exists a combination of two or more persons who, by concerted action, intend to accomplish an unlawful objective for the purpose of harming another and damage results from those acts. (*See Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 971 P.2d 1251 (Dec. 1998).

216.    As alleged above, the Defendants have combined and conspired to illegally stifle interstate commerce and thwart fair competition for the Defendants' own, individual and private financial gains and interests.

217.    The Defendants have, by concerted action, amended regulations without satisfying the mandatory requirements of the Nevada Administrative Procedures Act to provide notice, an opportunity to be heard by the public, and other safeguards and oversight; investigated, prosecuted, adjudicated, and taken other actions in response to alleged violations of the same illegally-enacted regulations they themselves promulgated; presided over and participated in

1   sham and fraudulent trials or proceedings and therein denied the victim defendants due process of

2   law and other federally-protected and constitutional rights; all with the intent to further their

3   unlawful objectives and illegal scheme.

4        218.   The Defendants have allowed criminal charges to be levied, tried, and determined

5   in the Defendants' administrative tribunal when the Defendants had no jurisdiction or authority to

6   try or determine criminal charges; denied parties their constitutional rights to due process, trial by

7   jury, and to not be witnesses against themselves; made findings and conclusions, and imposed

8   penalties, which are unsupported even contradicted by evidence; made findings and conclusions,

9   and imposed penalties, even after acknowledging on the record that the required *mens rea*

10  requirements for such findings, conclusions, and penalties have not been met; conducted

11  fraudulent and sham hearings and trials; and mis-used their public offices in their unlawful efforts

12  to stifle interstate commerce and thwart fair competition for the Defendants' own, individual and

13  private financial gains.

14       219.   The Defendants have conspired to, among other things, commit the torts of abuse

15  of process, unfair competition, and interference with prospective and actual business advantage,

16  in addition to violations of antitrust laws, the RICO statute, and deprivation of constitutional

17  rights.

18       220.   The Defendants have done the foregoing with unlawful intent, and not merely a

19  mistaken understanding of the law. This is especially true and evidenced by the fact that Marcus

20  Brokers actively and consistently objected to the Defendants' actions—and thereby informed the

21  Defendants of the law and their legal duties, obligations, and limitations on their authority—yet

22  Defendants proceeded with their illegal scheme despite having been so informed of the law.

23       221.   The Defendants have acted with intent to harm Marcus and its Brokers by denying

24  them opportunities to earn livelihoods, denying them rights to compete freely and fairly, imposing

25  penalties and fines against them in excess of $700,000, and forcing Marcus & Millichap to incur

26  hundreds of thousands of dollars in attorneys' fees and costs, all as part of the Defendants' illegal

27  scheme designed to stifle interstate commerce and thwart fair competition for the Defendants'

28  own, individual and private financial gains.

106826895_4              - 75 -

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

222.    Marcus & Millichap has been significantly harmed by the Defendants' conspiracy, and is entitled to an award of all damages suffered as a result of the Defendants' illegal scheme, including but not limited to the more than $700,000 the Defendants have forced Marcus & Millichap to pay in fines and penalties (or in bonds as matters are on appeal), the hundreds of thousands of dollars in attorneys' fees and costs Marcus & Millichap has incurred defending against Defendants' illegal scheme, and is expected to incur as it continues to fight against Defendants' illegal scheme, and all other remedies and relief available to Marcus & Millichap under the law.

### SEVENTH CAUSE OF ACTION
**(Unfair Competition / Deceptive Trade Practices)**

223.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

224.    Nevada Revised Statute § 598.0923 provides in pertinent part, "A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly: . . . (3) Violates a state or federal statute or regulation relating to the sale or lease of goods or services. [or] (4) Uses coercion, duress or intimidation in a transaction."

225.    The Defendants, including the NREC Defendants and Former NREC President who are each licensed real estate brokers living in Nevada, have engaged in unfair competition by misusing their public offices to concoct and maintain an illegal regulatory and disciplinary scheme with intent to stifle interstate commerce and thwart fair competition for the Defendants' own, individual and private financial gains, in violation of—at a minimum—federal antitrust laws and the RICO statute.

226.    The federal antitrust laws and the RICO statute each relate to the sale or lease of goods or services.  The Sherman Act, 15 U.S.C. Sections 1 and 2, specifically prohibits restraints of trade or commerce among the states. Such trade and commerce undoubtedly includes the sale or lease of goods and services, such as real estate brokerage. The RICO statute prohibits, among other things, conducting or participating in the affairs of any "enterprise" engaged in or affecting

1   interstate commerce, such as the NREC. Such interstate commerce undoubtedly includes the sale
2   or lease of goods and services, such as real estate brokerage.

3       227.   In so doing, the Defendants have violated state and federal laws relating to the sale
4   of goods or services, including antitrust laws and the RICO statute, as alleged above.

5       228.   Additionally, the Defendants have used coercion, duress or intimidation in
6   numerous transactions. Each of the Defendants' investigations, prosecutions, and disciplinary
7   actions against Marcus Brokers, including Marcus & Millichap, has been done in connection with
8   the specific transactions at issue in those proceedings. The Defendants' actions in connection
9   with those proceedings have been done with the intent to coerce, cause duress, and/or to
10  intimidate Marcus Brokers to either get out of the Nevada real estate market in its entirety or to
11  comport to the Defendants' illegal regulatory scheme. The use of coercion, duress, or
12  intimidation in these proceedings have had the effect of preventing Marcus Brokers, and other
13  out-of-state brokers, from engaging in other transactions which, instead, have been handled by the
14  Defendants or other in-state Nevada resident brokers like the Defendants.

15      229.   The Defendants have violated Marcus & Millichap's state and federal rights in the
16  course of the Defendants' business or occupation. Defendant Holle is employed by the NRED
17  and is paid for his investigation and participation in the prosecution of Marcus Brokers. The
18  other Defendants are each entitled to receive "(a) A salary of not more than $150 per day . . .
19  while engaged in the business of the Commission; and (b) A per diem allowance and travel
20  expenses . . . while engaged in the business of the Commission." *See* Nev. Rev. Stat. §
21  645.140(4). Moreover, the NREC Defendants were acting as market participants competing with
22  Marcus Brokers when utilizing their roles as NREC Commissioners, and thus their conduct
23  undertaken as Commissioners was in furtherance of their private business or occupation as real
24  estate brokers.

25      230.   Because the Defendants' violations of state and federal law have been undertaken
26  by the Defendants in the course of his or her individual business or occupation, mis-using their
27  public offices for their own personal gains, the Defendants have engaged in "Deceptive trade
28  practices" in violation of Nev. Rev. Stat. § 598.0923.

231.    Consumers and the general public have been harmed by Defendants' deceptive trade practices, by among other things having been deceived that Defendants, and other similarly situated in-state brokers, are the only lawfully available option to represent them in their various real estate transactions, when the U.S. Constitution and federal laws prohibit the Defendants' deceptive practices and the unlawful exclusion of out-of-state brokers.

232.    Marcus & Millichap has been significantly harmed by the Defendants' unfair competition, and is entitled to an award of all damages suffered as a result of the Defendants' illegal scheme, including but not limited to the more than $700,000 the Defendants have forced Marcus & Millichap to pay in fines and penalties (or in bonds as matters are on appeal), the hundreds of thousands of dollars in attorneys' fees and costs Marcus & Millichap has incurred defending against Defendants' illegal scheme, and is expected to incur as it continues to fight against Defendants' illegal scheme, and all other remedies and relief available to Marcus & Millichap under the law.

## EIGHTH CAUSE OF ACTION
### (Tortious Interference with Business Relations)

233.    Marcus & Millichap hereby incorporates by this reference each of the foregoing allegations and restates the same as though set forth fully herein.

234.    Marcus and its Brokers have business relationships with property owners and consumers of commercial real estate nationwide, including in Nevada and with regard to Nevada real estate.

235.    Even those property owners and consumers which do not yet have business relationships with Marcus and its Brokers are prospective customers and clients of Marcus and its Brokers.

236.    The Defendants, licensed real estate brokers in the State of Nevada, know of Marcus's and its Brokers' business relationships (either actual, or at a minimum prospective).

237.    The Defendants, as alleged above, through their illegal regulatory and disciplinary scheme have acted with intent to prevent Marcus and its Brokers from forming business relationships with property owners and resident consumers of Nevada real estate, and to interfere

1   with any such relationships, such that Marcus and its Brokers have been and continues to be

2   prevented from providing services to these prospective or actual relations.

3       238.    The Defendants unlawful activities, alleged above, remove and destroy any

4   privilege or justification which might otherwise protect the Defendants from liability for the

5   Defendants' actions. There is no "privilege" or "justification" for the Defendants' unlawful

6   actions pleaded in this Complaint.

7       239.    Marcus & Millichap has been significantly harmed by the Defendants' intentional

8   interference with Marcus & Millichap's business relationships. Marcus and its out-of-state

9   Brokers have been denied the opportunity to represent owners of Nevada real estate seeking to

10  sell their Nevada properties. Marcus and its out-of-state Brokers have been denied the opportunity

11  to represent Nevada residents seeking to buy Nevada properties. Marcus & Millichap is entitled to

12  an award of all damages suffered as a result of the Defendants' conduct, and all other remedies

13  and relief available to Marcus & Millichap under the law.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment)

16      240.    Marcus & Millichap hereby incorporates by this reference each of the foregoing

17  allegations and restates the same as though set forth fully herein.

18      241.    There exists an actual, genuine, bona fide, and substantial controversy and dispute

19  between the parties to this action, and the parties hereto have adverse legal interests.

20          a.  Marcus Brokers, including Marcus & Millichap, has been repeatedly

21              investigated, prosecuted, disciplined, and harassed by the Defendants as part of the

22              Defendants' illegal enterprise and unconstitutional regulatory scheme. Specifically,

23              Plaintiffs allege:

24                  i.  The restrictions imposed on interstate commerce, including but not limited

25                      to the amended regulations adopted by the NREC contained in Nev.

26                      Admin. Code § 645.185, violate the Dormant Commerce Clause of the

27                      U.S. Constitution, federal antitrust laws, and the RICO statute.

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

ii.   The Defendants' conduct against Marcus Brokers, including Marcus & Millichap, violate the Plaintiffs' constitutional rights to due process, fair and impartial trials of criminal charges by juries of their peers and to be free from self-incrimination, and also violate federal antitrust laws and the RICO statute.

b.   The Defendants have consistently asserted their authority to do what they have done, and continue to do, against Marcus and its Brokers.

242.   The parties hereto have adverse legal interests. The Defendants continue to investigate, prosecute, and discipline Marcus Brokers, and continue to assert the legality and constitutionality of their prior investigations, prosecutions, and disciplining of Marcus Brokers in legal proceedings before this Court and the Nevada state court.

243.   The controversy in this action is of such immediacy and reality to warrant the issuance of a declaratory judgment.  If the Defendants' conduct is not declared unconstitutional and in violation of federal law and federally-protected rights, the Defendants will continue to investigate, adjudicate, and take action against Marcus and its Brokers.

244.   This Court has authority, pursuant to 28 U.S.C. § 2201, to declare the rights and other legal relations of the interested parties.

245.   Marcus & Millichap respectfully requests the Court declare the following:

a.   The restrictions imposed on interstate commerce, including but not limited the amended regulations adopted by the NREC contained in Nev. Admin. Code § 645.185, violate the Dormant Commerce Clause of the U.S. Constitution, federal antitrust laws, and the RICO statute.

b.   The Defendants' conduct against Marcus and its Brokers, including Marcus & Millichap, violate the Plaintiffs' constitutional rights to due process, fair and impartial trials of criminal charges by juries of their peers and to be free from self-incrimination, and also violate federal antitrust laws and the RICO statute.

1

**REQUEST FOR RELIEF**

2      NOW, WHEREFORE, Marcus & Millichap hereby requests judgment in its favor and

3  against the Defendants as follows:

4      1.  For Declaratory Judgment that the regulations amended or promulgated by the

5  Defendants, and other restrictions on interstate commerce pursued by the Defendants, are

6  unconstitutional and violate federal antitrust laws, the RICO statute, and other federally or

7  constitutionally protected rights;

8      2.  For Declaratory Judgment that the Defendants' investigations, prosecutions, and

9  disciplinary actions for alleged violations of the unconstitutional regulations are themselves

10  unconstitutional and violate federal antitrust laws, the RICO statute, and other federally or

11  constitutionally protected rights;

12      3.  For immediate, preliminary, and permanent injunctive relief enjoining any and all further

13  action by the Defendants as members of the NREC;

14      4.  For equitable relief setting aside and vacating all findings, conclusions, orders, fines, and

15  penalties imposed against Marcus Brokers by the NREC;

16      5.  For equitable relief dissolving or reorganizing the NREC;

17      6.  For monetary damages in an amount to be proven at trial but estimated to be not less than

18  the more than $700,000 in fines and penalties imposed against Marcus & Millichap as part of

19  Defendants' illegal scheme as well as the hundreds of thousands of dollars in attorneys' fees and

20  costs incurred by Marcus & Millichap—for itself and on behalf of its Brokers—fighting and

21  defending against the Defendants' scheme;

22      7.  For monetary damages in an amount to be proven at trial but equal to the Plaintiffs'

23  consequential damages, including but not limited to lost profits and business opportunities

24  including (i) lost profits and opportunities resulting from the significant and burdensome time

25  Marcus and its Brokers have been compelled to devote to fighting against the Defendants' illegal

26  scheme, and (ii) lost profits and opportunities resulting from Plaintiffs not being allowed to do

27  business in Nevada without being subject to the Defendants' illegal scheme;

28

Lewis Roca
ROTHGERBER CHRISTIE

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

106826895_4

8.  For disgorgement of all proceeds received by each of the Defendants as a result of their illegal restraints on trade, including but not limited to commissions they received in the course of their business(es) that might have gone to any out-of-state broker had the out-of-state broker been permitted to do business in this state without the Defendants' illegal scheme;

9.  For an award of treble damages as permitted by law;

10. For an award of punitive damages as permitted by law;

11. For pre- and post-judgment interest, attorneys' fees and costs, as permitted by law; and

12. For such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Marcus & Millichap hereby demands trial by jury on all matters so triable.

DATED this **21**ˢᵗ day of December, 2018.

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

Dan R. Waite (Nev. Bar #4078)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
dwaite@lrrc.com

Evan A. Fetters (Utah Bar # 16045)
*Pro Hac Vice Application To Be Filed*
Tyler A. Theobald (California Bar # 254215)
*Pro Hac Vice Application To Be Filed*
Spencer H. Reed (Utah Bar # 13338)
*Pro Hac Vice Application To Be Filed*
**OFFICE OF THE GENERAL COUNSEL OF MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC.**
111 South Main Street, Suite 500
Salt Lake City, UT 84111
Tel: (801) 736-2627
Fax: (801) 736-2610
evan.fetters@marcusmillichap.com
tyler.theobald@marcusmillichap.com
spencer.reed@marcusmillichap.com

Shawn T. Richards (Utah Bar # 11949)
*Pro Hac Vice Application To Be Filed*
Christopher S. Hill (Utah Bar # 9931)
*Pro Hac Vice Application To Be Filed*
**KIRTON | MCCONKIE**
36 S. State Street, Suite 1900
Salt Lake City, UT 84111
Tel: (801) 328-3600
Fax: (801) 212-2019
srichards@kmclaw.com
chill@kmclaw.com


**G. Robert Blakey** (D.C. Bar # 424844)
*Pro Hac Vice Application To Be Filed*
William J. & Dorothy K. O'Neill
Professor of Law
Notre Dame Law School[6]
7002 East San Miguel Ave.
Paradise Valley, AZ 85352
Tel: (574) 514-8220
Blakey.1@nd.edu

Plaintiff's Address:

Marcus & Millichap Real Estate Investment Services, Inc.
23975 Park Sorrento #400
Calabasas, CA 91302

Marcus & Millichap Real Estate Investment Services of Nevada, Inc.
23975 Park Sorrento #400
Calabasas, CA 91302

Perry White
11258 Revelry Ln.
Las Vegas, NV 89138

Gordon Allred
On Lakeshore Center 3281 East Guasti Road, Suite 800
Ontario, CA 91761

---

[6] For purposes of identification only.

106826895_4                                    - 83 -

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Lewis Roca
ROTHGERBER CHRISTIE